PIPPIN v ATALLAH

Docket No. 219428. Submitted February 14, 2001, at Detroit. Decided March 20, 2001, at 9:00 A M.

Timothy D. Pippin, as conservator for Joshua L. Pippin, a protected person, and Blue Cross Blue Shield of Michigan brought an action in the Oakland Circuit Court against Pierre Atallah, Ruthmarie Shea, and Atallah Development Company & Associates, Inc. (the Atallah defendants), and Great Atlantic & Pacific Tea Company (A&P), seeking damages for injuries sustained by Joshua when, while riding his bicycle, he collided with a chain that had been placed in a parking lot that surrounded what was formerly a grocery store operated by A&P, which continues to hold a leasehold interest in the property. The Atallah defendants are the owners and landlord of the property, and their employee installed the chain. The parking lot had been used for years by members of the public to enter an abutting municipal park and hiking and biking path. The chain was placed in the lot in an attempt to prevent unrestricted use of the lot by the public. The court, Alice L. Gilbert, J., granted summary disposition in favor of the Atallah defendants. The court held that Joshua was a trespasser; that, while Joshua was present in the parking lot, the chain represented a condition on the property rather than active negligence on the Atallah defendants' part; and that the plaintiffs' attractive nuisance theory failed because the dangerous condition stemmed from Joshua's use of the lot as a thoroughfare to the park, rather than from the chain and its placement. The plaintiffs' claims against A&P were voluntarily dismissed with prejudice, and the defendants' crossclaims were voluntarily dismissed on the condition that they could be reinstated if the order of summary disposition was reversed on appeal. The plaintiffs appealed.

The Court of Appeals *held*:

1. The court erred in finding that Joshua was a trespasser. A rational factfinder could determine that he was a licensee by virtue of A&P's implied permission resulting from A&P's acquiescence in the customary use of the property by the public to gain access to the park. Summary disposition was improper because it was for the jury to decide Joshua's status as a trespasser, licensee, or invitee.

2. The question whether the chain was open and obvious was one for the jury. The court's error in holding that Joshua was a trespasser requires that the order granting summary disposition be reversed and the matter be remanded to the trial court for further proceedings.

3. It is unassailable that, if Joshua was a trespasser, the Atallah defendants should have anticipated his presence because they admittedly were aware that juveniles and others were habitually in the parking lot.

4. The court erred in granting summary disposition in favor of the Atallah defendants with regard to the plaintiffs' claim of attractive nuisance.

Reversed and remanded.

1. NEGLIGENCE — PREMISES LIABILITY.

The question whether a person who enters upon the land of another is a trespasser, a licensee, or an invitee is generally one for the jury where there is evidence from which the particular person's status on the land can be inferred.

2. NEGLIGENCE — PREMISES LIABILITY — LICENSEES.

A "licensee" is a person who is privileged to enter the land of another by virtue of the possessor's consent, either express or implied; consent may be implied where the owner, or person in control of the property, acquiesces in the known, customary use of property by the public.

3. NEGLIGENCE — PREMISES LIABILITY — LICENSEES.

A possessor of land has no obligation to take any steps to safeguard licensees from conditions that are open and obvious; no liability arises if the licensee knows or has reason to know of a danger that is open and obvious or if the possessor should expect that the licensee will discover the danger.

4. NEGLIGENCE — PREMISES LIABILITY — TRESPASSERS.

A landowner generally owes no duty to a trespasser except to refrain from injuring the trespasser by wilful and wanton misconduct; after a landowner is aware of the presence of a trespasser or licensee, or if in the exercise of ordinary care should have known of the presence of the trespasser or licensee, the landowner must use ordinary care to prevent injury to the trespasser or licensee arising from active negligence; however, the landowner's duty does not encompass conduct that occurred before the trespasser arrived.

5. NEGLIGENCE — PREMISES LIABILITY — ATTRACTIVE NUISANCES — TRESPASSING CHILDREN.

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition on the land if the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass; if the condition is one of which the possessor knows or has reason to know and which the possessor realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children; if the children, because of their youth, do not discover the condition or the risk involved in intermeddling with it or in coming within the area made dangerous by it; if the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved; and if the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

*Hall & Doran, P.L.C.* (by *Terrence L. Hall*), for the plaintiffs.

*Michael F. Skinner*, co-attorney for plaintiff Blue Cross Blue Shield of Michigan.

*James J. Raftery* and *Lisa M. Neddo*, for Pierre Atallah, Ruthmarie Shea, and Atallah Development Company & Associates, Inc.

Before: SMOLENSKI, P.J., and JANSEN and FITZGERALD, JJ.

PER CURIAM. This premises liability action was filed by Timothy Pippin on behalf of his son, Joshua. After the action was filed, Blue Cross Blue Shield of Michigan was joined as a plaintiff to recover sums paid on Joshua's behalf for health care services related to a diagnosis of traumatic brain injury. The trial court granted a motion for summary disposition brought by defendants-appellees Pierre Atallah, Ruthmarie Shea, and Atallah Development Company & Associates, Inc. (the Atallah defendants). Subsequently, plaintiffs'

claims against defendant Great Atlantic & Pacific Tea Company (A&P) were voluntarily dismissed with prejudice, and the defendants' crossclaims were voluntarily dismissed on the condition that they could be reinstated if the summary disposition was reversed on appeal. Plaintiffs appeal as of right, arguing that the trial court erred in granting summary disposition for the Atallah defendants. We reverse and remand.

This case involves an incident that occurred in the city of Rochester on June 2, 1992, when then twelve-year-old Joshua collided with a four-foot-high chain while riding a bicycle, causing Joshua to be lifted from his bicycle by the neck, resulting in injuries to his neck, head, and brain. The chain had been strung that same morning in a blacktop parking lot that surrounded what was formerly a grocery store operated by A&P. There is no dispute that the Atallah defendants were the owners and landlord of the property, nor is there any dispute that it was their employee who hung the chain. It is also undisputed that, at the time of the incident, a leasehold in the property was held by A&P and that the lease had been in effect, in one form or another, since 1952. Further, there is no dispute that at the relevant time and since October 1990 A&P had ceased operating a grocery store at that location but was continuing to make payments on its lease.

The record reveals that the eastern edge of the A&P parking lot fronts Main Street, while part of the western edge of the lot abuts Rochester Municipal Park and a hike/bike path known as The Paint Creek Trail. At the back of the lot was a maintained path leading into the park and trail that, for at least ten years before this incident, had been routinely used by mem-

bers of the public to enter the park or trail without apparent objection from A&P. The record also reveals that the Atallah defendants had concerns about the unrestricted use of the parking lot and premises by the public after A&P stopped operating the grocery store. Customers of neighboring businesses routinely parked their vehicles in the A&P lot, and, according to the Atallah defendants, the property was suffering from the consequences attendant with the frequent presence of unsupervised juveniles. However, representatives from A&P, who had been expressly permitting charitable and civic organizations to use the lot for particular functions, did not view the public's use of the lot as a problem of any significance and declined the Atallah defendants' suggestion that they chain off the parking lot. Consequently, the Atallah defendants took it upon themselves to install two chains. Within hours, and following a series of collisions and near collisions with the chains, the Rochester Police Department removed the chains.

With regard to the Atallah defendants, plaintiffs first alleged that Joshua's injuries were the result of their breach of a duty of care owed to Joshua, and then pleaded a more specific claim under Michigan's attractive nuisance doctrine. Ultimately, the trial court granted summary disposition to the Atallah defendants on the grounds that (1) Joshua was a trespasser, (2) while Joshua was present in the parking lot, the chains represented a condition on the property rather than active negligence on the Atallah defendants' part, and (3) plaintiffs' attractive nuisance theory failed because the dangerous condition stemmed from Joshua's use of the lot as a thorough-

fare to the park, rather than from the chains and their placement.

We review decisions on motions for summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Where, as here, the trial court grants such a motion pursuant to both MCR 2.116(C)(8) and (10), and it is clear that the court looked beyond the pleadings, this Court "will treat the motions as having been granted pursuant to MCR 2.116(C)(10)," which "tests whether there is factual support for a claim." *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000). On a motion under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other documentary evidence to determine whether a genuine issue of material fact exists to warrant a trial. *Kefgen, supra* at 616. All reasonable inferences are resolved in the nonmoving party's favor. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617-618; 537 NW2d 185 (1995).

Plaintiffs first contend that a question of fact existed with regard to whether Joshua was a trespasser and, therefore, summary disposition was improperly granted. With regard to premises liability actions, persons who enter upon the land or premises of another are either trespassers, licensees, or invitees, with each category having a corresponding standard of care owed by the possessor of real property. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). Generally, if there is evidence from which one could infer a particular person's status on land, then the question is one for the jury. *Id.* at 595.

"A 'licensee' is a person who is privileged to enter the land of another by virtue of the possessor's consent." *Id.* at 596. Such consent may be either express or implied. Permission may be implied where the owner, or person in control of the property, "acquiesces in the known, customary use of property by the public." *Alvin v Simpson*, 195 Mich App 418, 420; 491 NW2d 604 (1992). Here, plaintiffs presented substantial evidence that traversing the A&P parking lot to get to Rochester Municipal Park and The Paint Creek Trail was a known and customary use of the property by the public. A Rochester Police detective provided a statement to that effect. Moreover, the very fact that there was a maintained pathway running from the park to the A&P, with an official sign posted directly at that entrance, supports an inference that, for years, there had been acquiescence by A&P in this use of their lot. That A&P continued to acquiesce in such use is supported by the deposition of the A&P property manager who opined that, in his opinion, the public's use of the lot was "no serious problem." The fact that the Atallah defendants had previously posted "No Parking" signs does not refute this inference, inasmuch as forbidding people to park their vehicles in a particular place does not necessarily convey the message that they may not walk or ride through that same place. Because a rational factfinder could determine that Joshua was a licensee by virtue of A&P's implied permission, the court erred in determining that Joshua was a trespasser.[1]

---

[1] If Joshua was A&P's licensee, the Atallah defendants, as A&P's landlord, may have owed him an even higher duty of care. See *Petraszewsky v Keeth (On Remand)*, 201 Mich App 535, 540-541; 506 NW2d 890 (1993).

The Atallah defendants nevertheless contend that, regardless of Joshua's status, the open and obvious doctrine would insulate them from liability. A possessor of land has no duty to give warning of dangers that are open and obvious, inasmuch as such dangers come with their own warning. Where there is a duty to a visitor to make a condition safe (i.e., the duty to an invitee), potential liability will remain for harm from conditions that are still unreasonably dangerous despite their open and obvious nature. *Bertrand, supra* at 611. However, with regard to licensees, no liability arises if the licensee knows or has reason to know of the danger, or if the possessor should expect that the licensee will discover the danger. *Wymer v Holmes*, 429 Mich 66, 71; 412 NW2d 213 (1987). Hence, a possessor of land has no obligation to take any steps to safeguard licensees from conditions that are open and obvious. See *Haas v Ionia*, 214 Mich App 361, 362; 543 NW2d 21 (1995) (the "open and obvious" danger principle establishes awareness and thus ability to avoid the danger).

Although the evidence conflicts regarding whether the chains were marked with caution tape, the occurrence of multiple incidents, and the statements from multiple witnesses, suggest that they were not. Drawing every inference in favor of plaintiffs, we must presume that the chains were not marked with caution tape. Also, the record reveals that these chains were not installed parallel to the sidewalk at the immediate entrances to the parking lot, nor did they surround or chain off access to the parking lot in any significant way so that they could have been easily avoided by anyone who noticed them. Instead they were stretched between light poles at an oblique angle in

such a manner that Joshua did not strike the chain until he had traveled some thirty feet into the lot, and would not have struck it at all had he made a sharper right turn from Main Street. Two small signs were hung from each chain, but over the sixty-four-foot length of the chain that Joshua struck, such signs necessarily left significant gaps. One witness stated that, under the reflection of the sun, these silver chains were "not visible straight on." Plaintiffs also tendered the affidavit of an expert in human perception and performance, who stressed two points. First, the chains were inherently difficult to see because they were silver, relatively small in width, and were stretched across an open setting where one's visual attention would be necessarily fixed on objects further in the distance. Second, human perception of objects is based largely on expectations regarding whether such objects would be present. According to the expert, there was nothing, besides the chains themselves, "to create the expectation of such an obstacle." On these bases, the expert opined that the chains represented an extreme hazard. We conclude that the question whether the chains were open and obvious was one for the jury, and, consequently, the court's error in holding that Joshua was a trespasser requires reversal and remand to the trial court.

Because, on remand, the factfinder may ultimately conclude that Joshua was a trespasser, we will address the balance of the issues raised by plaintiffs on appeal. We find it unassailable that, if Joshua was a trespasser, the Atallah defendants should have anticipated his presence because they admittedly were aware that juveniles and others were habitually in the parking lot. Plaintiffs argue that the trial court

erred in determining that hanging the chains was not "active negligence." Plaintiffs also argue that even if the hanging of the chains was not active negligence, the court erred in failing to acknowledge that the Atallah defendants had a duty to warn known or constant trespassers of a highly dangerous condition pursuant to the rationale of 2 Restatement Torts, 2d, §§ 335, 337. However, the rationale of those Restatement sections has never been adopted in Michigan. In Michigan, the general rule with regard to trespassers is that "[t]he landowner owes no duty to the trespasser except to refrain from injuring him by 'wilful and wanton' misconduct." *Stitt, supra* at 596. This general rule has long been subject to the interpretation that, "after the owner of premises is aware of the presence of a trespasser or licensee, or if in the exercise of ordinary care he should know of their presence, he is bound to use ordinary care to prevent injury to them arising from active negligence." *Schmidt v Michigan Coal & Mining Co*, 159 Mich 308, 311-312; 123 NW 1122 (1909). "Active negligence," in this context, involves action or conduct. See *Preston v Austin*, 206 Mich 194, 201; 172 NW 377 (1919) ("before the principle of active negligence can apply, some duty must rest upon the defendant which is violated by his conduct or act"). Because the duty to refrain from active negligence only arises after the premises owner becomes aware, or should be aware, of the trespasser's presence, it follows that it does not encompass conduct that occurred before the trespasser arrived.[2]

---

[2] Plaintiffs' contrary assertion regarding "active negligence" erroneously relies on cases involving licensees and invitees where a possessor's *knowledge* of a dangerous condition was at issue. That is, where a posses-

Plaintiffs also argue that, if Joshua was a trespasser, he was a child trespasser and the court erroneously dismissed their claim that the Atallah defendants breached their duty to him under Michigan's doctrine of "attractive nuisance," which applies to reasonably foreseeable trespassing children.[3] In this regard, Michigan has expressly adopted 2 Restatement Torts, 2d, § 339, which addresses itself to conditions on the property.[4] *Rand v Knapp Shoe Stores*, 178 Mich App 735; 444 NW2d 156 (1989); *Murday v*

---

sor does have a duty to guard against dangerous conditions, there is a difference between the failure to discover a dangerous condition created by another, and the creation of a dangerous condition by the possessor. Where the possessor is the one who created the condition, knowledge of the condition is imputed to the possessor, but where the condition is created by a third person, there is a factual question regarding whether the possessor should have reasonably discovered the condition. See *Williams v Borman's Foods, Inc*, 191 Mich App 320, 321; 477 NW2d 425 (1991) (proof of notice is not necessary where the defendant's agents created the condition). This concept is applicable in the instant case to demonstrate that the Atallah defendants were aware of the chains because their agent erected them. However, plaintiffs' authority does nothing to contradict the rule that "active negligence," in the context of the duty to known trespassers, means negligent acts or conduct occurring after the trespasser is present.

[3] The term "attractive nuisance" is a misnomer (or historical leftover) because it is not necessary, in order to maintain such an action, that the hazardous condition be the reason that the children came onto the property.

[4] That Restatement section provides:

Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

*Bales Trucking, Inc*, 165 Mich App 747, 751-752; 419 NW2d 451 (1988); *Gilbert v Sabin*, 76 Mich App 137, 141-142; 256 NW2d 54 (1977).

If the trial court's statement of the law were correct (i.e., that it was Joshua's use of the property, rather than the chains, that created the hazardous condition), there could never be recovery under an attractive nuisance theory. It is apparent to us that the trial court misapplied the reasoning of *Rand* and *Murday*. In *Rand*, a child was struck and injured by a car while on his bicycle. The accident occurred behind the defendant shoe store, where children apparently used the sidewalk as a ramp to jump their bicycles into the alley. The plaintiff lost on appeal because, although the defendant shoe store may have been aware of the condition of the alley, there was no evidence that it was aware that children were using the sidewalk as a bicycle jump. The danger stemmed from the specific way in which the children used the alley, and the defendant lacked knowledge of that use. *Rand, supra* at 737-742. Similarly, in *Murday*, the defendants used property for excavation and to dump salvage from buildings. Three children came onto the property and dug a cave into a hill that had been created by the defendants. About five feet in, the cave collapsed on the children. This Court held that it was

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children. [2 Restatement Torts, 2d, § 339.]

the children who created the dangerous condition, and further stated: "in order to hold defendants liable in this instance, they had to have notice that children were digging caves or tunnels and thereby subjecting themselves to a dangerous condition." *Murday, supra* at 753.

The instant case is factually distinguishable from *Rand* and *Murday*. First, Joshua did not string the chains, so he cannot be compared to the children in *Murday* who dug the cave. Second, Joshua did not use the A&P parking lot in a manner that was unknown to the Atallah defendants, so he cannot be compared to the children who used the shoe store alley in a way not known to its owners. Shifting the blame for the hazard from the chains to Joshua's use does not help the Atallah defendants because they were aware, or should have been aware, of both the chains and the use of the lot made by children like Joshua. Therefore, the trial court erred in granting summary disposition to defendants on plaintiffs' attractive nuisance claim.

Reversed and remanded for proceedings consistent with this opinion. Jurisdiction is not retained.