Gerald **WOODARD**, Plaintiff,

v.

**ERP OPERATING LIMITED PARTNERSHIP, an Illinois Limited Partnership, Defendant.**

No. 04–70050.

United States District Court, E.D. Michigan, Southern Division.

Jan. 13, 2005.

Christopher J. Hastings, Berkley, MI, for Plaintiff.

Paul S. Koczkur, Lupo & Koczkur, Detroit, MI, for Defendant.

## AMENDED MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [1]

COHN, District Judge.

### I. Introduction

This is a tort case. Plaintiff Gerald Woodard (Woodard) is suing Defendant Equity Operating Limited Partnership (Equity) for injuries Woodard allegedly sustained after slipping and falling on black ice at one of Equity's apartment complexes.

Before the Court is Equity's Motion for Summary Judgment. For the reasons that follow, the motion is DENIED.

### II. Background

On the night of January 29, 2002, Woodard traveled to The Pines of Cloverlane Apartments (The Pines) in Ypsilanti, Michigan, an apartment complex owned by Equity. Woodard was going to The Pines to visit his friend Nathan Kline (Kline) who lived at 4795 Gatewood Circle. When he arrived at Kline's residence, Woodard walked across a grass area adjacent to the sidewalk to reach the common entrance to 4795 Gatewood Circle. At approximately 4:00 a.m. on January 30, 2002, Woodard and another friend exited Kline's apartment to retrieve some compact discs from their cars. Woodard again walked across the grass area adjacent to the sidewalk to reach his car. After retrieving the compact discs from his car, Woodard walked on the sidewalk back to the apartment entrance. Before he reached the entrance, however, Woodard slipped and fell on a patch of ice in an area of the sidewalk that had cracked and broken concrete. Woodard says that the fall caused him to suffer a fractured ankle and a post-surgical infection that compounded his injury.

### III. Discussion

#### A. Legal Standard

##### 1. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts

1. This Memorandum and Order supersedes the Memorandum and Order of January 7, 2005 as it pertains to Section III(A)(2)(a).

showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. *See Moore v. Philip Morris Co.,* 8 F.3d 335, 340 (6th Cir.1993); *see also Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.,* 25 F.3d 1320, 1323 (6th Cir.1994) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505). The Court "must view the evidence in the light most favorable to the non-moving party." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.,* 69 F.3d 98, 101 (6th Cir.1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. *Thompson v. Ashe,* 250 F.3d 399, 405 (6th Cir.2001).

### 2. Tort Liability[2]

#### a. Woodard's Status as an Invitee or Licensee

Michigan recognizes three common-law categories for people who enter another's land or premises: (1) trespasser, (2) licensee, and (3) invitee. *Stitt v. Holland Abundant Life Fellowship,* 462 Mich. 591, 596, 614 N.W.2d 88 (2000). These classifications dictate the level of care a landowner owes the visitor. Invitees receive the highest level of protection under premises liability law:

> The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards.

*Id.* at 597, 614 N.W.2d 88. Licenses are entitled to a lesser degree of protection:

> A 'licensee' is a person who is privileged to enter the land of another by virtue of the possessor's consent. A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit. Typically, social guests are licensees who assume the ordinary risks associated with their visit.

*Id.* at 596, 614 N.W.2d 88. The parties characterized Woodard in their papers as an invitee on Equity's premises. An invitee is "a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premis-

es, and make [it] safe for [the invitee's] reception." *Id.* at 596–97, 614 N.W.2d 88 (internal quotation and citation omitted).

■ In *Stitt*, the Michigan Supreme Court clarified that under Michigan law, invitee status extends to individuals entering property held open for a commercial purpose. *Id.* at 604, 614 N.W.2d 88. Licensee status, however, generally is extended to social guests like Woodard was when he visited Kline. *Id.* at 596, 614 N.W.2d 88. Even though social guests generally are classified as licensees, the landlord-tenant context may change that result and thus classify a social guest of a tenant as an invitee of the landlord when the social guest brings a premises liability action against the tenant's landlord:

> A landlord generally grants to the tenants the right to invite others to use the common areas of the property in order that they might gain access to the property under the tenants' control. Because the tenants do not receive any pecuniary benefit from the visits of their social guests, those invited as social guests of the tenants are licensees for the purpose of defining the duty their hosts owe them. However, the landlord does receive some pecuniary benefit. Part of the rent paid to the landlord is the consideration for giving to the tenants the right to invite others onto the property. Thus, the same duty that a landlord owes to its tenants also is owed to their guests, because both are the landlord's invitees.

*Stanley v. Town Square Coop.*, 203 Mich. App. 143, 147–48, 512 N.W.2d 51 (1993); *see also Petraszewsky v. Keeth*, 201 Mich. App. 535, 506 N.W.2d 890 (1993). Thus, *Stanley* suggests that in a case like this one, Woodard is a licensee of Kline (the tenant), but an invitee of Equity (the landlord).

Despite the Michigan Supreme Court's holding in 2000 in *Stitt* that invitee status extends only to those visiting premises for a commercial purpose, it appears that the *Stitt* holding has not affected the analysis for invitee or licensee status in the context of the level of care a landlord owes one of its tenant's social guests. Indeed, subsequent to *Stitt*, the Michigan Court of Appeals continues to hold that a social guest of a tenant is an invitee of the landlord. *See, e.g., Smithmier v. Greyberry Apartments of Wayne*, 2004 WL 797557 (Mich. App. Apr. 13, 2004) *1; *Pippin v. Atallah*, 245 Mich.App. 136, 142 n. 1, 626 N.W.2d 911 (2001). Regardless of whether Woodard should be classified as an invitee or a licensee, however, the result discussed below regarding Equity's potential tort liability is unaffected.

### b. "Open and Obvious" Doctrine

■ Under Michigan's "open and obvious" doctrine for premises liability actions, "[a] possessor of land has no duty to give warning of dangers that are open and obvious, inasmuch as such dangers come with their own warning." *Pippin*, 245 Mich.App. at 143, 626 N.W.2d 911. A possessor of land generally has no duty to safeguard invitees or licensees from conditions that are open and obvious. *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516, 629 N.W.2d 384 (2001) (invitees); *Pippin*, 245 Mich.App. at 143, 626 N.W.2d 911 (licensees). In examining whether a risk of harm is open and obvious, the question is whether an average person of ordinary intelligence would "have been able to discover the danger and the risk presented upon casual inspection." *Novotney v. Burger King Corp.*, 198 Mich.App. 470, 475, 499 N.W.2d 379 (1993) (citing *Glittenberg v. Doughboy Recreational Indus.*, 441 Mich. 379, 491 N.W.2d 208 (1992)). What is open and obvious is an objective standard. *Adams v. Perry Furniture Co.*, 198

Mich.App. 1, 497 N.W.2d 514 (1993). Whether the plaintiff actually discovered the danger is irrelevant. *Novotney*, 198 Mich.App. at 475, 499 N.W.2d 379.

The "open and obvious" doctrine is one of the most litigated areas of Michigan premises liability law.[3] Despite the fact that Michigan courts have decided hundreds of cases involving the doctrine, inconsistent applications of the doctrine have resulted in a confusing jurisprudence. *See, e.g.,* Bryan J. Waldman, *Michigan Premises Liability Law: The Open and Obvious Danger Doctrine,* 78 MICH. B.J. 544 (1999) ("it remains one of the most misunderstood and inappropriately applied legal principles of Michigan tort law.").

■ Academic writings have suggested that the doctrine has become increasingly confusing since the early 1990s when Michigan courts began to expand the doctrine's applicability with the Michigan Supreme Court's decision in *Riddle v. McLouth Steel Prods. Corp.,* 440 Mich. 85, 485 N.W.2d 676 (1992). *See* David A. Dworetsky, *Lugo v. Ameritech Corp. and Joyce v. Rubin: Michigan Courts Continue to Expand the Application of the Open and Obvious Danger Doctrine,* 81 U. DET.

MERCY L.REV. 65, 67 (2003). In *Riddle,* the Michigan Supreme Court found that the Michigan Court of Appeals incorrectly determined that the "open and obvious" doctrine is inconsistent with Michigan's comparative negligence principles.[4] The *Riddle* court held that the " 'no duty to warn of open and obvious dangers' rule" remained viable after the adoption of comparative negligence in Michigan. *Id.* at 100, 485 N.W.2d 676. The *Riddle* court also held that the trial court improperly instructed the jury regarding the duty a premises owner has to invitees. *Id.* at 101, 485 N.W.2d 676.[5] On appeal, the defendant challenged a jury instruction that read in part, "[t]he possessor must warn the invitee of dangers of which it knows or has created...." *Id.* at 101, 485 N.W.2d 676. The defendant claimed, and the majority agreed, that the instruction, M Civ. JI 19.03, left the jury with the impression "that a premises owner's duty to warn an invitee of dangerous conditions on the premises is absolute and ever present." *Id.* The Michigan Supreme Court reversed the decision of the Michigan Court of Appeals and remanded the case for a new trial. *Id.* at 103, 485 N.W.2d 676.[6,7]

3. Indeed, a search of Westlaw for Michigan premises liability cases involving application of the "open and obvious" doctrine within the last ten years yielded 374 results.

4. The Michigan Supreme Court adopted the doctrine of comparative negligence in *Placek v. City of Sterling Heights,* 405 Mich. 638, 275 N.W.2d 511 (1979), to accomplish a goal of a "fair system of apportionment of damages." *Id.* at 660, 275 N.W.2d 511. Under the doctrine, a defendant may present evidence of a plaintiff's negligence in order to reduce the defendant's liability. *Id.* at 660–62, 275 N.W.2d 511.

5. Despite the plaintiff's argument on appeal to the Michigan Supreme Court that the defendant failed to object to the challenged jury instruction and, in fact, requested the jury instruction at trial, the majority in *Riddle*

noted that it would review the error "to avoid manifest injustice" despite the general rule that an appellate court will not review an error not properly preserved below. *Id.* at 101 n. 15, 485 N.W.2d 676.

6. Justice Levin, writing for the dissent in *Riddle,* disagreed that the jury instruction rose to the level of "manifest injustice." *Id.* at 114, 485 N.W.2d 676. Justice Levin stated that the majority's opinion implicitly stated that M Civ. JI 19.03 is deficient for failing to expressly state that there is "no duty to warn of open and obvious dangers." *Id.* at 116, 485 N.W.2d 676. However, Justice Levin stated that read in context, it could not be said that the jury was left with the impression that the defendant had to warn the plaintiff of dangers that were open and obvious to him. *Id.* at 105, 485 N.W.2d 676. Justice Levin also

A plaintiff in a premises liability action generally may raise any of three theories: (1) failure to warn, (2) negligent maintenance, or (3) defective physical structure. *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 610, 537 N.W.2d 185 (1995). In *Bertrand*, the Michigan Supreme Court reaffirmed its holding in *Riddle* that the "open and obvious" doctrine applies in failure to warn cases:

> If the plaintiff alleges that the defendant failed to warn of the danger, yet no reasonable juror would find that the danger was not open and obvious, then the trial court properly may preclude a failure to warn theory from reaching the jury by granting partial summary judgment.

*Id.* at 617, 537 N.W.2d 185. The *Bertrand* court did not, however, decide whether the "open and obvious" danger doctrine applies to negligent maintenance or defective physical structure cases. Despite the holdings of *Riddle* and *Bertrand*, however, subsequent Michigan Court of Appeals cases have held that the "open and obvious" doctrine applies to cases premised on theories other than a failure to warn. For instance, in *Millikin v. Walton Manor Mobile Home Park, Inc.*, 234 Mich.App. 490, 595 N.W.2d 152 (1999), the Michigan Court of Appeals held that the "open and obvious" doctrine applies to cases premised on a failure to maintain theory. *Id.* at 493, 595 N.W.2d 152.

Additional expansion of the doctrine came with the Michigan Supreme Court's decision in *Lugo, supra. Lugo* stands for the proposition that even if there is an open and obvious danger, a possessor of land will not be relieved of the duty to warn if the danger contains "special aspects" that make it unreasonably dangerous. *Id.* at 517, 629 N.W.2d 384. The *Lugo* court provided examples of such "special aspects," including (1) a condition that is "effectively unavoidable," like standing water at the only exit from a commercial building, and (2) "an unguarded thirty foot deep pit in the middle of a parking lot." *Id.* at 518, 629 N.W.2d 384. The Michigan Supreme Court reasoned that even though such conditions are open and obvious, they are unavoidable and should not preclude liability. *Id.*

The *Lugo* "special aspects" analysis has since been applied in snow and ice accumulation cases like this one. In *Joyce v. Rubin*, 249 Mich.App. 231, 642 N.W.2d 360 (2002), the Michigan Court of Appeals affirmed the trial court's grant of summary disposition to the defendant because (1) the snowy condition on a sidewalk where the plaintiff fell was open and obvious and (2) the risk of harm was not unreasonably dangerous. *Id.* at 234, 642 N.W.2d 360. One author notes that the *Joyce* decision is significant because the Michigan Supreme Court in 1975 recognized that the "open and obvious" doctrine was not proper in snow and ice cases. *See* Dworetsky at 83. Prior to the Michigan Supreme Court's decision in *Quinlivan v. Great Atl. & Pac. Tea Co., Inc.*, 395 Mich. 244, 235 N.W.2d 732 (1975), Michigan applied the natural accumulation doctrine in snow and ice cases involving invitees. The natural accumulation doctrine could mitigate a defendant's liability if a condition was caused by natural accumulations of snow and ice. *Id.* at 252–53, 235 N.W.2d 732. The Michigan Supreme Court over-

---

found it instructive that the defendant did not request that the jury be instructed that there is "no duty to warn of open and obvious dangers." *Id.* at 106, 485 N.W.2d 676.

7. It is also noteworthy that Michigan's Committee on Model Civil Jury Instructions is considering an amendment to M Civ. JI 19.03 that would give detailed jury instructions on the "open and obvious" doctrine.

ruled the natural accumulation doctrine in *Quinlivan* and adopted Alaska's view that ice and snow hazards are not obvious to all and may give rise to liability. *Id.* at 261, 235 N.W.2d 732. "While the invitor is not an absolute insurer of the safety of the invitee, the invitor has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation." *Id.* Michigan cases now recognize that snow and ice may be an open and obvious danger precluding a defendant's liability, though there is still confusion concerning the application of the doctrine to snow and ice cases.

### B. Analysis

#### 1. Open and Obvious

■■■ Equity claims that any alleged ice on the sidewalk outside Kline's apartment was open and obvious. Equity says that a reasonable person in Woodard's position would have noticed the ice. In support of this position, Equity says that Woodard testified that he was able to see the ice after he fell and that he was not paying attention and not looking down at where he was walking. These claims, however, are of no moment for two reasons: (1) this case involves "black ice," and by its very nature such ice is not noticeable upon casual inspection; and (2) a fair reading of Woodard's deposition testimony does not support the claim that he was not paying attention while walking.

Woodard testified that there was "a little bit" of snow on the ground when he arrived at The Pines. He testified that he "was paying attention to where [he] was going" and that he was looking forward immediately before he fell on the sidewalk. Woodard said that he did not see that the concrete where he fell was broken because the area was dark. Woodard testified that he slipped on black ice and that he did not notice the ice until after he fell. At that

time, he testified, he could feel the ice that allegedly caused him to fall.

The facts of record show that there are genuine issues of material fact for a jury to consider. It cannot be said that the ice that allegedly caused Woodard to slip and fall was open and obvious as a matter of law.

Michigan courts have recognized that black ice presents a special issue in the context of Michigan's open and obvious doctrine. In *Kenny v. Kaatz Funeral Home, Inc.*, 264 Mich.App. 99, 689 N.W.2d 737 (2004), the plaintiff slipped and fell in the defendant's parking lot. The plaintiff testified that it was dark when she fell in the parking lot, that the pavement was covered with snow, that she could not see any ice on the pavement, and that she could not see the ice that caused her to fall until after she had already fallen. *Id.* The Michigan Court of Appeals reversed the trial court's grant of summary disposition to the defendant because, the court said,

reasonable minds could differ regarding the open and obvious nature of black ice under snow; therefore, the openness and obviousness of the danger must be determined by a jury. Clearly, the black ice, as a latent danger, was not visible, which detracts from a finding that the danger was open and obvious upon casual inspection.

*Id.* In *Kantner v. Ann Arbor Tower Plaza Condominium Ass'n*, 2004 WL 2601289, *1 (Mich.App. Nov. 16, 2004), the Michigan Court of Appeals also reversed the trial court's grant of summary disposition based on the open and obvious doctrine. *Id.* The court noted that "[b]y its very nature, black ice is not noticeable *even without* a covering of snow." *Id.* at *3 (emphasis in original). In *Kantner*, like in *Kenny* and in this case, the plaintiff became aware of the presence of black ice only after she fell on what she initially believed to be dry

concrete. *Id.* The court of appeals found that the black ice was not immediately noticeable and that the trial court improperly determined that black ice was open and obvious as a matter of law. *Id.* Rather, the court of appeals held, that issue was a factual question for a jury to determine. *Id.* Equity says that, unlike in *Kenny,* there is no testimony that the alleged patch of black ice was obscured from Woodard's view by a layer of snow. This statement is unavailing, however, because regardless of whether snow covered the ice, and as recognized in *Kantner,* black ice by its very nature is not noticeable even without a covering of snow.

Equity cites *Wright v. ERP Operating Ltd. P'ship,* No. 02–70304 (E.D.Mich. Jan. 30, 2003) for the notion that an average person should have recognized the weather conditions when Woodard fell and should have foreseen the danger. In *Wright,* another judge in this district granted summary judgment to Equity, finding that ice and snow on a sidewalk at The Pines was open and obvious. *Id.* at 4. The plaintiff in *Wright* went to her daughter's apartment at 7:00 a.m. in December 2000 to pick up her son. *Id.* at 2. The plaintiff slid and caught herself as she walked up a step from the parking lot. *Id.* As she walked along the sidewalk, she slipped and fell on ice that was covered by snow, causing her to injure her knee. *Id.* The court noted that the plaintiff was used to Michigan winters by virtue of the fact that she had lived in the state since 1968, that the temperature fluctuated daily and created icy conditions, and that "an average person with ordinary intelligence would have recognized that the condition was hazardous and would have foreseen the danger." *Id.* at 5–6. While it is true that Woodard testified that he has lived in Michigan all of his life and that he is familiar with Michigan winters, the fact that the injury in *Wright* occurred at 7:00 a.m. versus dark conditions at 4:00 a.m. in this case and night conditions at 6:30 p.m. in *Kenny* and 7:15 p.m. in *Kantner* militates against finding the condition Woodard faced to be open and obvious upon casual inspection.

In further support of the fact that the record cannot support a finding of an open and obvious condition, there is conflicting testimony regarding the lighting conditions at the time Woodard fell. Three of The Pines' maintenance engineers testified that even if the light post near the portion of the sidewalk where Woodard fell was not working at the time of the accident, other light fixtures nearby would have illuminated the area where Woodard fell. Woodard, however, testified that the area was not adequately illuminated. Additionally, two of The Pines' maintenance engineers, Larry Woody and Wayne King, testified that they were aware of broken concrete on the sidewalk where Woodard fell. Larry Woody testified that he told his supervisor about the sidewalk condition but that nothing was ever done to fix the problem. Both Larry Woody and Marco Cirone testified that they would have to clear standing water to prevent ice formations when they noticed water in concrete cracks like the one where Woodard fell. Kline testified that water "always" collected and formed ice in the area where Woodard fell.

Because genuine issues of material fact exist regarding whether the ice on Equity's sidewalk was open and obvious, the Court cannot proceed to analysis under *Lugo* regarding whether the condition possessed "special aspects" that rendered it unreasonably dangerous.

### 2. Mich. Comp. Laws § 554.139

Woodard alleges in the complaint that Equity violated Mich. Comp. Laws § 554.139, which provides, in pertinent part:

(1) In every lease or license of residential premises, the lessor or licensor covenants:

   (a) That the premises and all common areas are fit for the use intended by the parties.

   (b) To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenants wilful or irresponsible conduct or lack of conduct.

   . . .

M.C.L. § 554.139 (West 2004). Equity claims that allegations of a violation of a statutory duty created by M.C.L. § 554.139 do not bar application of the open and obvious doctrine. Woodard says that a landlord's alleged violation of M.C.L. § 554.139 precludes the landlord from raising the open and obvious defense. Woodard is correct.

   ▉▉▉ The Michigan Supreme Court has held that the open and obvious doctrine cannot be used to avoid a specific statutory duty. *Woodbury v. Bruckner,* 467 Mich. 922, 658 N.W.2d 482 (2002); *see also Jones v. Enertel, Inc.,* 467 Mich. 266, 650 N.W.2d 334 (2002). As explained in *O'Donnell v. Garasic,* 259 Mich.App. 569, 676 N.W.2d 213 (2003),

[t]he open and obvious danger doctrine is not available to deny liability to an injured invitee or licensee on leased or licensed residential premises when such premises present a material breach of the specific statutory duty imposed on owners of residential properties to maintain their premises in reasonable repair and in accordance with the health and safety laws, as provided in MCL 554.139(1)(a) and (b).

*Id.* at 581, 676 N.W.2d 213. Accordingly, a question of fact also exists regarding whether Equity violated M.C.L. § 554.139. If it did, it is precluded from asserting the open and obvious doctrine as a defense.

## IV. Conclusion

The Court is constrained to observe that decisions by judges applying Michigan's "open and obvious" doctrine implicate the decision maker's sensitivities to the scope of the Seventh Amendment right to a trial by jury to address disputed issues of fact.[8] The decisions in this area of the law frequently lose sight of one of the very foundations of our system of government—the right to a trial by jury—by allowing the decision maker on summary judgment or judgment as a matter of law following a trial by jury to substitute its view of the facts for that of the jury.

SO ORDERED.

▉▉▉▉▉▉

---

8. The Seventh Amendment to the U.S. Constitution provides:

   In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend. VII.