# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 25, 2018

155413

SUSAN BLACKWELL,
       Plaintiff-Appellee,

v

DEAN FRANCHI and DEBRA FRANCHI,
       Defendants-Appellants.

_____/

Stephen J. Markman,
*Chief Justice*

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement,
*Justices*

SC: 155413
COA: 328929
Oakland CC: 2014-141562-NI

On March 6, 2018, the Court heard oral argument on the application for leave to appeal the January 31, 2017 judgment of the Court of Appeals. On order of the Court, the application is again considered. MCR 7.305(H)(1). In lieu of granting leave to appeal, we REMAND this case to the Court of Appeals to determine whether the defendants had a duty to warn the plaintiff of the condition. The panel did not consider the defendants' other arguments, which could have provided alternative grounds to affirm the trial court's grant of summary disposition, notwithstanding its conclusion—which we do not disturb—that questions of fact remain as to whether the particular condition was open and obvious.

As an initial matter, we agree with both lower courts that the plaintiff was a licensee. In *Preston v Sleziak*, we adopted the Restatement (Second) of Torts' articulation of the duty owed by a premises possessor to licensees:

> "A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved." [*Preston v Sleziak*, 383 Mich 442, 453 (1970), quoting Restatement Torts, 2d, § 342, p 210, overruled in part on other grounds by *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591 (2000).]

"The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit." *Stitt*, 462 Mich at 596. In short, the defendants could satisfy

their duty of care to a licensee like the plaintiff by warning of any conditions that a licensee would not have reason to know of and that posed an unreasonable risk of harm; beyond this duty to warn of certain conditions, the defendants had no affirmative duty to inspect the premises or to make the premises safe for licensees. If the particular condition here did not give rise to a duty to warn, the defendants cannot be held liable.

On the other hand, "the 'no duty to warn of open and obvious danger' rule is a defensive doctrine that attacks the duty element that a plaintiff must establish in a prima facie negligence case." *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 95-96 (1992). If the defendants had no duty to warn of the condition because it did not " 'involve[] an unreasonable risk of harm to [the plaintiff]' " or was not one that the defendants " 'should expect that [the plaintiff would] not discover,' " the plaintiff's prima facie negligence claim fails, regardless of the openness and obviousness of the condition. *Preston*, 383 Mich at 453, quoting Restatement, § 342. A question of fact as to the openness and obviousness of the step is irrelevant if there is no prima facie claim. There is no need to "attack[] the duty element" if the defendants owed no duty in the first place. See *Riddle*, 440 Mich at 96.

Although the defendants did argue that *if* the condition was one for which they owed a duty to warn licensees, it was nevertheless open and obvious, and the trial court granted their motion for summary disposition on that basis, that was not the only basis for their summary disposition motion. The defendants have also consistently presented another argument: that the particular condition complained of here—a single step in a dark room—was not a condition that a licensee would not know of or have reason to know of that posed an unreasonable risk of harm such that the defendants had a duty to warn.

If the defendants prevail on this claim, the trial court's ruling should be affirmed on this alternative basis. In other words, the panel should determine whether the defendants owed a duty to the plaintiff with respect to this particular condition regardless of whether the condition was open and obvious. See *Preston*, 383 Mich at 453.

Accordingly, we REMAND this case to the Court of Appeals for consideration of this issue it has not yet addressed: whether defendants owed plaintiff a duty to warn about the step because the plaintiff did not " 'know or have reason to know of the condition and the risk involved,' " and it involved " 'an unreasonable risk of harm,' " and the defendants should not have expected that a licensee like the plaintiff would " 'discover or realize the danger . . . .' " *Id*., quoting Restatement, § 342.

We do not retain jurisdiction.

MCCORMACK, J. (*concurring*).

I concur in the Court's order remanding this case to the Court of Appeals to address the defendants' remaining summary disposition claims, which could provide an alternative basis for affirming the trial court ruling. I agree that questions of fact remain as to whether the particular condition—an 8-inch step in a dark room—was open and obvious, and that that question may not be material if the defendants had no duty to warn the plaintiff for the other reasons they have given.

I write briefly to respond to the dissent. A lot of the dissent's concerns may be addressed by the Court of Appeals in deciding the defendants' other claims within our traditional doctrinal framework. Indeed, settled doctrine provides an avenue to reach the same result as the dissent would have us reach today where the record so supports. But I want to clarify what I believe that inquiry should look like, and why I believe the dissent's alternative approach departs from well-established doctrine.

First, the dissent relies mistakenly on principles of comparative negligence to define the scope of the defendants' duty to warn. I am sympathetic to the dissent's view that a social host should expect guests to behave prudently and should not be held liable for their negligence. And there is room for the dissent's underlying concerns to do work in a proper analysis of duty. The Restatement (Second) of Torts, which we adopted in *Preston*, provides that a possessor has a duty to warn of a condition if the condition "involves an unreasonable risk of harm to . . . licensees" and the possessor "*should expect that they* [*a licensee*] *will not discover or realize the danger . . . .*" 2 Restatement Torts, 2d, § 342, p 210 (emphasis added). This principle would support the dissent's contention that "[d]efendants had every right to expect that plaintiff was such a prudent person who would turn on the light and see the step, or at a minimum decline to walk into a darkened room without even the most cursory effort to determine whether it was safe to do so."

And yet, this element of the duty to licensees does not mean that a host has no duty whatsoever to warn a social guest about any condition in a dark room (no matter how dangerous) because the host is entitled as a matter of law to expect guests to take the affirmative step of turning on a light switch to discover hazards. To be sure, a reasonably prudent person, walking through a strange house, might turn on the light before entering a dark room. And when a guest fails to do so, that failure may very well be relevant to apportioning damages under comparative negligence principles. But it will not be a reason for a court to find as a matter of law that there is no duty to the guest at all, no matter what dangerous condition awaited her.

The Restatement contemplates that a licensee will discover "conditions which are perceptible by his senses, or the existence of which can be inferred from facts within the licensee's knowledge." Restatement, § 342, comment *f*, p 212. Some conditions in a dark room will be more predictable than others—for example, it might be a fact within the licensee's knowledge that "mudrooms . . . are [often] adjacent to garages" and that "garages are often themselves not level with the home" (these "facts" seem to be within

the dissent's knowledge, curiously). The Restatement's standard thus assigns the homeowner a duty commensurate with the hazard: a slipper on the floor in a dark mudroom is different than an open shark tank in that same dark room. I trust the Court of Appeals can evaluate based on the record where the 8-inch step falls on that continuum.

The dissent, in contrast, would create some kind of strange per se rule: defendants as a matter of law do not owe a duty to warn licensees of any danger that lurks in a dark room if there is a light switch nearby. Perhaps unsurprisingly, this rule does not map onto any argument that the defendants made in this case, and it would constitute a new approach to premises doctrine.[1] Under it, courts could decide for themselves as a legal matter that if a plaintiff appeared at all negligent (to a judge, unmoored from a factual record), she cannot recover and her suit is dismissed.

Such a rule also would resurrect a judicial version of our long-dead contributory negligence regime under the camouflage of a duty analysis. But of course such an approach does not comport with the established understanding of negligence doctrine. The dissent owns its doctrinal contortion: "Although *Brusseau* was decided on the basis of contributory negligence, I believe that it would today likely be resolved on the basis of duty."

But we judges are not authorized to apply contributory negligence principles by recasting them as duty. The Legislature has foreclosed that approach. Michigan, like most other jurisdictions, went from a contributory negligence jurisdiction to a comparative fault jurisdiction decades ago—comparative fault was judicially adopted in 1979 in *Placek v City of Sterling Heights*, 405 Mich 638 (1979), and the Legislature specifically adopted comparative fault with 1982 PA 147. It was codified in its present form in 1995 in MCL 600.2959. The Legislature, by requiring that a plaintiff's recovery be reduced by the percentage of her own negligence, mandated that a plaintiff's negligence could not be used as a basis to dismiss a suit altogether.[2] And we have clearly

---

[1] This new approach would not result in less litigation, of course. Just different litigation. Rather than litigating the dangerousness of the condition on the land, the parties instead will wage a war of light-switch litigation. We could look forward to adjudicating questions about where the light switch was, whether it was easily findable, and what a licensee should have to do to find it. And it begins to look like an affirmative duty to ensure that there is an accessible and working light switch. So much for relief for property owners.

[2] Michigan is (mostly) a pure comparative negligence jurisdiction. That is, even if a plaintiff is 99% at fault, she can still recover 1% damages. The one exception to this is for noneconomic damages—like compensation for pain and suffering, emotional distress, or loss of enjoyment—which are barred whenever the plaintiff is more at fault than anyone else. MCL 600.2959 ("If that person's percentage of fault is greater than the

held that the Legislature's adoption of comparative fault did not abrogate the common-law, status-based duties of care of premises possessors:

> Once a defendant's legal duty is established, the reasonableness of the defendant's conduct under that standard is generally a question for the jury. *The jury* must decide whether the defendant breached the legal duty owed to the plaintiff, that the defendant's breach was the proximate cause of the plaintiff's injuries, and thus, that the defendant is negligent.
>
> * * *
>
> Conversely, comparative negligence is an affirmative defense. Michigan adopted this standard to promulgate a "fair system of apportionment of damages." *Under this doctrine, a defendant may present evidence of a plaintiff's negligence in order to reduce liability.* [*Riddle*, 440 Mich at 96, 98 (citations omitted; emphasis added).]

We went on to quote the reasoning of the Illinois Supreme Court on the same question from *Ward v K mart Corp*, 136 Ill 2d 132, 145 (1990), which held:

> In a common law negligence action, before a plaintiff's fault can be compared with that of the defendant, it obviously must first be determined that the defendant was negligent. It is fundamental tort law that before a defendant can be found to have been negligent, it must first be determined that the defendant owed a legal duty to the plaintiff.

In short, we must operate under the comparative fault regime the Legislature imposed. Comparative fault is a rule of decision for damages. It does not define the contours of the defendant's legal duty.

Second, while the dissent does not cite much of the evidence from the deposition testimony, a court considering a motion under MCR 2.116(C)(10) is obligated to evaluate it. The dissent proceeds as if a number of facts are undisputed. For example, the dissent states that "there is nothing to suggest that defendants had reason to expect that plaintiff would not in a timely manner discover the step." But the plaintiff *has* suggested a few reasons: the plaintiff testified in her deposition that the floor of the mudroom appeared level with the wood floor of the hallway; Endia Simmons testified that if she had been the one to enter the mudroom first, she would have fallen, because there was no way to tell any height differential existed; Ebony Whisenant also testified that the floor looked level between the two rooms; and photographs show that the dark floor could make the step

---

aggregate fault of the other person or persons, whether or not parties to the action, the court shall reduce economic damages by the percentage of comparative fault . . . and noneconomic damages shall not be awarded.")

difficult to see, even with adequate light.[3]  Ultimately, even if evidence clearly weighs in favor of the party seeking summary disposition, it is not the role of courts to weigh evidence in a motion brought under MCR 2.116(C)(10).  Instead, a court must consider the evidence in the light most favorable to the nonmovant and determine if reasonable minds could differ in resolving the evidence.  MCR 2.116(C)(10); *Maiden v Rozwood*, 461 Mich 109, 120 (1999); *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425 (2008).  The lower courts are well equipped to assess the record with the assistance of the parties in evaluating the facts relevant to the remanded claims.[4]

---

[3] There are also questions of fact that would be relevant if the dissent's no-duty-if-there-is-a-light-switch rule prevailed: whether the plaintiff would have known which light switch corresponded with the mudroom, how obvious that switch was, whether she should have flipped it.  And so on.

[4] While unimportant to resolving this case, I am puzzled by the dissent's view that the open and obvious danger doctrine is only relevant to invitees.  I do not follow this doctrinal move.  I am aware of no authority that limits the work that the open and obvious danger doctrine can do in the way the dissent views it.  We have never held that the open and obvious danger doctrine is limited to invitees.  Indeed, the Court of Appeals has routinely applied the doctrine to licensees, and we have not intervened.  See, e.g., *Pippin v Atallah*, 245 Mich App 136, 143 (2001) ("[A] possessor of land has no obligation to take any steps to safeguard licensees from conditions that are open and obvious.").

The open and obvious danger doctrine is implicit in the definition of the duty owed to licensees because a premises possessor will never owe a duty to warn licensees of an open and obvious danger.  A danger that is open and obvious will always be one a landowner should expect that a licensee should discover.

The Restatement explicitly incorporates the open and obvious danger doctrine as a limit on liability to invitees, who would otherwise be entitled to expect greater protection from the landowner.  Comment *a* to § 343 instructs that § 343 "should be read together with § 343 A, which deals with the effect of the fact that the condition is known to the invitee, or is obvious to him . . . .  That Section limits the liability here stated."  And Comment *b* to Restatement § 343 offers a detailed explanation of the distinction between the duty owed to licensees and invitees.  It concludes:

> As stated in § 342, the possessor is under no duty to protect the licensee against dangers of which the licensee knows or has reason to know.  On the other hand, as stated in § 343 A, there are some situations in which there is a duty to protect an invitee against even known dangers, where the possessor should anticipate harm to the invitee notwithstanding such knowledge.  [Restatement, § 343, p 217.]

To reiterate, the proper evaluation of a homeowner's duty to a licensee will take into account the questions that concern the dissent. But no doctrinal contortion is needed to protect property owners from baseless claims. Well-established doctrine will work.

VIVIANO, J., joins the statement of MCCORMACK, J.

MARKMAN, C.J. (*dissenting*).

This case concerns an incident that occurred during a Christmas party hosted by defendants and attended by plaintiff. When plaintiff arrived, she went to place her purse for the evening in a small room adjoining the garage. Notwithstanding that the room was dark, plaintiff chose to proceed into the room without turning on the light switch that was immediately adjacent to the entryway. She then lost her balance and fell, injuring herself, when she set foot into the room, which was about 8 inches lower than the hallway. Can defendants be held liable in premises liability for plaintiff's injuries? I think not and believe this to be a long-settled matter of common law in this state. Accordingly, I respectfully dissent from this Court's order remanding to the Court of Appeals to address the issue of duty because I would instead conclude today that defendants owed no duty. Thus, I would reverse the judgment of the Court of Appeals and reinstate the trial court's grant of summary disposition in favor of defendants.

---

Our court's version of this carve out of the open and obvious danger defense for invitees is the special aspects doctrine. As in the Restatement's treatment, there is no reason that the special aspects carve out for invitees should apply to licensees—a possessor owes a licensee nothing more than a duty to warn, and an open and obvious danger comes as its own warning. The work that the open and obvious danger doctrine can do for both classes of visitors is apples to apples: there is no duty to warn *any* visitor of open or obvious dangers. But the extent of residual duty is oranges. Invitees must still be protected from certain known dangers; but a licensee who encounters an open and obvious danger has received the only protection to which he is entitled under our doctrine—a warning.

I agree with amicus curiae the Michigan Manufacturers Association—a landowner has a duty to warn of dangers she should not expect a licensee to discover, but "[a]ny duty to warn does not apply to dangers that are open and obvious . . . ." The existence of an open and obvious danger *itself* warns guests of a potential hazard. Thus, if a danger is open and obvious, a property owner has no duty to fix it (for invitees) or to warn about it (for licensees). In my view, property owners should be able to rely on the open and obvious danger doctrine no matter who is visiting.

## I. FACTS AND HISTORY

Plaintiff Susan Blackwell attended a December 2013 party at the home of defendants Dean and Debra Franchi. When plaintiff arrived, she was allegedly told by the latter that she could place her purse in a small room to the left, described as the "mudroom" by the parties. There was no light on in the mudroom, and according to plaintiff, the hallway that adjoined the mudroom was "dimly lit." However, there was a light switch immediately next to the entrance. There was an 8-inch step creating a drop-off into the mudroom. Plaintiff, however, in the belief that the mudroom was level with the hallway, walked directly into the mudroom, lost her balance and fell, suffering injuries. Plaintiff had made no effort to turn on the light beforehand or otherwise to check to be certain that it was safe to enter the mudroom.

Plaintiff sued defendants on the basis of premises liability, alleging that defendants breached the duty owed to her as an invitee by failing to "inspect for hazards, dangers and improper conditions of the premises"; "warn[,] advise and instruct persons regarding potentially dangerous conditions on the premises"; and "provide safe, proper and adequate access and egress to the Plaintiff and others similarly situated[.]"[5] Defendants moved for summary disposition, and the trial court, Oakland Circuit Court Judge Colleen O'Brien, granted their motion, concluding at the outset that plaintiff was a licensee and not an invitee. The court then concluded that even if plaintiff was an invitee, defendants were still entitled to summary disposition because "reasonable minds could not differ that the alleged condition here was open and obvious. Moreover, there are no special aspects."

Plaintiff appealed, arguing that she was instead an invitee and that the step was not open and obvious because the hallway floor and the mudroom floor appeared to be level under the lighting conditions confronted. According to plaintiff, defendants were negligent by failing to provide adequate lighting or to warn her that there was a step down into the mudroom. The Court of Appeals reversed and remanded to the trial court for further proceedings in an opinion authored by Judge SHAPIRO. *Blackwell v Franchi*, 318 Mich App 573 (2017). The appellate court reasoned that although the trial court had correctly concluded that plaintiff was a licensee, *id.* at 572 n 2, it nonetheless erred by granting summary disposition in favor of defendants because there was "a question of fact about whether an average user acting under the conditions existing when plaintiff approached the mud room would have been able to discover the drop-off upon casual inspection," *id.* at 578. "The determination of whether defendants had a duty to warn

---

[5] Plaintiff also brought a claim on the basis of private nuisance, a claim dismissed by the trial court and not at issue here.

plaintiff of the drop-off depends on how the conflicting testimony regarding whether the drop-off was open and obvious is resolved." *Id*. at 579.[6]

Defendants sought leave to appeal in this Court, and we directed the Clerk to schedule oral argument on the application and the parties to address the following issue:

> [W]hether the appellants owed a duty to warn the appellee of the condition on the land at issue, given the general rule that "[a] landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved," *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596 (2000). [*Blackwell v Franchi*, 501 Mich 903 (2017) (second alteration in original).]

## II. STANDARD OF REVIEW

This Court reviews de novo the grant or denial of summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118 (1999). "Whether a defendant owes a particular plaintiff a duty is a question of law that this Court reviews de novo," *Bailey v Schaaf*, 494 Mich 595, 603 (2013), and is "an issue solely for the court to decide," *Murdock v Higgins*, 454 Mich 46, 53 (1997) (quotation marks and citation omitted).

## III. ANALYSIS

"The starting point for any discussion of the rules governing premises liability law is establishing what duty a premises possessor owes to those who come onto his land." *Hoffner v Lanctoe*, 492 Mich 450, 460 (2012). "Michigan has recognized three common-law categories for persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, or (3) invitee." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596 (2000). In all cases, however, "both the possessors of land and those who come onto it [must] exercise common sense and prudent judgment when confronting hazards on the land." *Hoffner*, 492 Mich at 459.

---

[6] Judge K. F. KELLY, dissenting, stated that she would have affirmed the trial court on the basis that "[p]laintiff should have realized the danger posed by entering a dark and unknown room." *Id*. at 582 (K. F. KELLY, J., dissenting). Judge GLEICHER responded in a concurrence that "darkness may impair a plaintiff's visibility to the extent that an otherwise observable danger no longer qualifies as open and obvious" and "the record hints of no clues that would have raised a suspicion of a significant elevation differential before continuing ahead." *Id*. at 580, 582 (GLEICHER, J., concurring).

"[T]he adult social guest is to be viewed as a licensee." *Preston v Sleziak*, 383 Mich 442, 453 (1970), overruled in part on other grounds by *Stitt*, 462 Mich 591. Plaintiff, an adult social guest of defendants, was accordingly a licensee.

> "The explanation usually given by the courts for the classification of social guests as licensees is that there is a common understanding that the guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be prepared for his reception, or that precautions will be taken for his safety, in any manner in which the possessor does not prepare or take precautions for his own safety, or that of the members of his family." [*Preston*, 383 Mich at 451, quoting 2 Restatement Torts, 2d, § 330, comment *h*, p 175.]

In *Preston*, this Court adopted § 342 of the Restatement in specifically setting forth the duty owed by a premises possessor to a licensee:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved. [*Preston*, 383 Mich at 453 (quotation marks omitted).]

More recently, in *Stitt*, this Court explained that "[a] landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved." *Stitt*, 462 Mich at 596. "The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit." *Id*.

> "Different floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons." *Garrett v WS Butterfield Theatres, Inc*, 261 Mich 262, 263 (1933). Generally, therefore, "steps and differing floor levels [are] not ordinarily actionable *unless* unique circumstances surrounding the area in issue made the situation unreasonably dangerous." *Bertrand v Alan Ford, Inc*, 449 Mich 606, 614 (1995). "[W]here there is something unusual about the steps, because of their 'character, location, or surrounding conditions,' then the duty of the possessor of land to exercise reasonable care remains." *Id*. at 617, quoting *Garrett*, 261 Mich at 263-264.

Here, there was nothing at all unusual about the step itself from the hallway into the mudroom. By all indications, the step was of a normal size and was in an ordinary location—the entranceway from the hallway into the mudroom. Furthermore, while the step was allegedly concealed by darkness, there is nothing to suggest that defendants had reason to expect that plaintiff would not in a timely manner discover the step. There was a door-sized entrance point separating the hallway from the mudroom and common sense suggests that where two discrete areas of a home are separated by such an entranceway, it is a reasonable possibility that the floor levels may well be different. This is particularly true where such mudrooms, as is often the case, are adjacent to garages, because garages are often themselves not level with the home, rendering mudrooms a common transition point from the garage to the home.[7] A prudent person should anticipate the possibility that floor levels could well be different in such circumstances. Moreover, there was a *light switch* on the hallway wall next to the mudroom entrance, by which a prudent person could have easily illuminated the mudroom. In my judgment, a prudent person does not blindly walk into a dark room, especially one that may be at a different floor level, when there is available a simple means of illuminating the room.[8] Defendants had

---

[7] The following deposition exchange between plaintiff's counsel and defendant Dean Franchi illustrates the parties' understanding of a "mudroom":

> *Q.* It's usually a room where, you know, you would take your shoes off or put your coat up or sometimes there's laundry in it and it leads to the garage?
> *A.* Yes.

[8] See *Brusseau v Selmo*, 286 Mich 171, 174 (1938) ("In the case at bar, plaintiff had notice of the darkened hallway. He could have had more light either by turning on the 'switch' or leaving the entrance door wide open, or by both. His failure to make use of appliances that would have lighted the stairway precludes his recovery."). Although *Brusseau* was decided on the basis of contributory negligence, I believe that it would today likely be resolved on the basis of duty. This is because *Brusseau* was decided when Michigan followed a scheme of contributory negligence and during that time, issues of duty in premises-liability cases were often cast as issues of such negligence. *Bertrand*, 449 Mich at 614 ("Before this Court adopted comparative negligence, the issue of openness and obviousness often arose as the affirmative defense of contributory negligence, which completely barred recovery."). Regardless of how *Brusseau* was resolved, that decision illustrates that this Court recognized decades ago that the law expects that people will avail themselves of easily available means of illuminating dark areas—e.g., an ordinarily placed light switch—and generally cannot recover for injuries suffered when they choose instead to proceed in the dark. This is merely a specific application of the overarching rule of premises liability that a premises possessor "is not

every right to expect that plaintiff was such a prudent person who would turn on the light and see the step, or at a minimum decline to walk into a darkened room without even the most cursory effort to determine whether it was safe to do so. That is, defendants had every right to expect that plaintiff would discover the step and avoid falling into the mudroom. See 25 ALR2d 599, 600, § 2 (explaining that a social guest can recover from a social host for failure to warn of a defect in the premises only when the social host "knows the guest will not, in the exercise of reasonable care, discover and avoid for himself" the danger); Restatement, § 342, comment *f*, p 212 ("The possessor is entitled to expect that the licensee . . . will be on the alert to discover conditions which involve risk to him. Indeed, it is not necessary that the condition be such as the licensee would discover by the use of his senses while upon the land."). Because defendants should not have expected that plaintiff would fail to discover the step, the "duty to warn" was not triggered and they cannot be held liable for her injuries. *Preston*, 383 Mich at 453.[9]

In ruling that plaintiff's claim could proceed to trial, the Court of Appeals rejected the argument that plaintiff's failure to turn on the light had any relevance to the question of duty: "Defendants . . . argue that the drop-off, or height differential, was open and obvious because plaintiff could have turned on a light switch located at the entry to the mud room that would have illuminated the mud room. However, this argument goes to whether plaintiff was comparatively negligent; it does not affect duty." *Blackwell*, 318 Mich App at 578. This reasoning badly misses the mark. As an initial matter and as the trial court creditably recognized, the open and obvious danger doctrine applies to *invitees*, not to licensees. *Hoffner*, 492 Mich at 460 ("[A]n integral component of the duty owed to an *invitee* considers whether a defect is 'open and obvious.' ") (citation omitted; emphasis added); *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425 n 2 (2008) ("[A] premises owner has a duty to exercise reasonable care to protect *an invitee* from an unreasonable risk of harm caused by a dangerous condition on the premises, but not when the condition is 'open and obvious.' ") (citation omitted; emphasis added).[10] But even

under legal duty to prevent careless persons from hurting themselves." *Garrett*, 261 Mich at 264.

[9] To the extent that plaintiff alleges that defendants may be held liable for failure to affirmatively illuminate the mudroom, I disagree for the simple reason that "[t]he landowner owes no [affirmative legal] duty . . . to make the premises safe for the licensee's visit." *Stitt*, 462 Mich at 596. See also *Brown v Berles*, 234 Mich 353, 355-356 (1926) ("[M]ere want of a light in the stairway did not constitute negligence rendering defendant liable to one falling down the stairs. . . . It is common in private homes, especially in the country, to have dark stairways to cellars and basements, and no one ever considered such a want of care.").

[10] Indeed, in addressing the open and obvious danger doctrine in leading cases such as *Bertrand* and *Lugo*, this Court cited §§ 343 and 343(A) of the Restatement. *Bertrand*, 449 Mich at 610-611; *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516-517 (2001).

Those two sections of the restatement are located in "Title E. Special Liability of Possessors of Land to Invitees." Restatement, p 215 (capitalization altered). Thus, the Restatement recognizes that the open and obvious danger doctrine is limited to *invitees*. Although this Court's order suggests that the open and obvious danger doctrine applies to licensees and the concurrence is "puzzled" by my assertion to the contrary, neither the order nor the concurrence has cited any authority from this Court applying that doctrine to licensees. Indeed, if the open and obvious danger doctrine applies to licensees, *I* am puzzled as to why the authors of the Restatement chose to place discussion of that doctrine in a section of the Restatement that is devoted exclusively to the duty owed to invitees.

Concluding that the open and obvious danger doctrine applies to licensees would create a conflict in our law. This is because part of the open and obvious danger doctrine is that a premises possessor owes an affirmative duty to alleviate the presence of certain unusual conditions of the land that have "special aspects." *Hoffner*, 492 Mich at 462 ("[T]his narrow 'special aspects' exception recognizes there could exist a condition that presents a risk of harm that is so unreasonably high that its presence is inexcusable, even in light of its open and obvious nature."). "[I]n resolving an issue regarding the open and obvious doctrine, the question is whether the *condition of the premises* at issue was open and obvious and, if so, whether there were special aspects of the situation that nevertheless made it unreasonably dangerous." *Lugo*, 464 Mich at 523. But in *Stitt*, we explained that a premises possessor "owes *no duty* of inspection or affirmative care *to make the premises safe* for the licensee's visit." *Stitt*, 462 Mich at 596 (emphasis added). Thus, if the open and obvious danger doctrine applies to licensees, it would follow that a premises possessor would owe an affirmative duty to licensees to alleviate the presence of certain conditions of the land—those that possess "special aspects"—which would be contradictory to *Stitt*.

That the open and obvious danger doctrine, which establishes one component of the duty owed by a premises possessor, is limited to invitees is important to recognize because there are several critical distinctions between the duty owed to invitees and the duty owed to licensees, and conflating the two would elevate the duty owed to licensees. For example, concerning invitees, a premises possessor is subject to liability if he or she " 'knows or *by the exercise of reasonable care would discover* the condition . . . .' " *Bertrand*, 449 Mich at 609, quoting Restatement, § 343, p 215 (emphasis added). That is, a premises possessor owes an invitee a duty to affirmatively "inspect the premises" for dangerous conditions of the land. *Stitt*, 462 Mich at 597. With regard to licensees, in contrast, a premises possessor must simply " 'know[] or [*have*] *reason to know* of the condition . . . .' " *Preston*, 383 Mich at 453, quoting Restatement, § 342, p 210 (emphasis added). That is, with regard to licensees, a premises possessor must be aware of facts that would give him or her reason to know of a dangerous condition of the land; there is no duty to affirmatively inspect the premises. Restatement, § 342, comment *d*, p 211 ("A possessor of land owes to a licensee no duty to prepare a safe place for the

more importantly, the duty to warn owed by a premises possessor to licensees is only implicated when the premises possessor "should expect that they will not discover or realize the danger[.]" *Preston*, 383 Mich at 453 (quotation marks and citation omitted). Accordingly, a social host is entitled to expect that social guests reasonably will discover for themselves commonplace potential dangers on the land without the assistance of an affirmative warning. A social host, in my judgment, is entitled to expect that a social guest will not proceed blindly into a dark room but will instead use a light switch to illuminate a room and thereby discover potential dangers within that room.[11] Therefore, the reason why defendants cannot be held liable to plaintiff for her injuries is *not* that she failed to turn on the light before entering the mudroom. While her failure to do so is indeed a matter of comparative negligence, defendants cannot be held liable because they were entitled to expect that plaintiff would "be on the alert to discover conditions which involve[d] risk" to her. Restatement, § 342, comment *f*, p 212.[12]

---

licensee's reception or to inspect the land to discover possible or even probable dangers."). Simply put, the law imposes a lesser duty on premises possessors, typically homeowners, who host social gatherings because "[t]he use of the premises is extended to [the licensee] merely as a personal favor to him." Restatement, § 330, comment *h*, p 175. It is simply incompatible with the nature of that relationship that homeowners who show hospitality to a social guest thereby be burdened with a *legal* duty to scour their premises, and affirmatively rearrange their domestic living arrangements, in order to identify or alleviate any condition that might conceivably cause harm to those guests.

[11] Common sense suggests that there is a risk associated with entering an unfamiliar dark room. Thus, the darkness of the room here was a warning that an unknown condition, dangerous or not, might await a social guest, such as plaintiff, on the other side. Once again, a "[d]efendant is not under [a] legal duty to prevent careless persons from hurting themselves." *Garrett*, 261 Mich at 264. Defendants had the *right* to expect that plaintiff herself would recognize the risk of walking into an unfamiliar dark room. Accordingly, defendants were under no obligation to warn plaintiff of the step, and I find the concurrence's focus on comparative negligence not to be relevant in any way.

[12] Simply stated, in determining whether a duty is owed by the premises possessor to a licensee, a proper analysis includes whether the premises possessor should expect that the licensee will not discover or realize a danger. See *Preston*, 383 Mich at 453. In other words, this analysis concerns the premises possessor's *expectations* of the licensee's conduct. The concurrence does not appear to disagree that premises possessors, such as defendants here, should have reasonably expected that a licensee, such as plaintiff, would turn on the light, but the concurrence proceeds to reason that the failure to turn on the light "may very well be relevant to apportioning damages under comparative negligence principles." I agree that plaintiff's failure to do so may well be relevant in a comparative-negligence analysis, but the concurrence does not explain *why* the presence of the light switch and defendants' reasonable expectations of plaintiff's conduct in relation to the light switch are not critical elements of the analysis of the *threshold* question of duty.

In the end, "the common law is but the accumulated expressions of the various judicial tribunals in their efforts to ascertain what is right and just between individuals in respect to private disputes." *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 242 (2013) (quotation marks, citations, and brackets omitted). Accordingly, the common law simply reflects the practices and common sense of society. See, e.g., *Gildersleeve v Hammond*, 109 Mich 431, 438 (1896) (explaining that "sound reason, common sense, and common honesty . . . are the foundation of the common law"). And it is a simple fact that countless social gatherings in Michigan successfully function, and have from time immemorial, on the straightforward, unstated premise that social guests are reasonably aware that walking blindly into the dark, or otherwise acting in a careless manner, may result in injury. Therefore, my conclusion is not only compelled by common sense, but as a result it is also consistent with our common law.

A contrary conclusion creating a *legal* obligation to warn social guests concerning the pitfalls of walking into dark rooms would hardly define the full extent of our decision. Instead, countless other legal obligations, limited only by the creativity and innovativeness of the bench and bar, would certainly be imposed upon homeowners. Would a host in directing a guest to her bathroom be legally obligated to provide a detailed warning, or otherwise supply a map of the bathroom, to the effect that a failure to turn on the light might cause the guest to run into a sink or bathtub? Would a host be legally obligated to explain to a guest why it is a poor idea to place her hand upon a stove being used to prepare dinner? And would a host be legally obligated to apprise guests of the assorted and sundry risks of dealing with cutlery, throw rugs, fireplaces, spilled drinks, stairways, and rickety chairs? If not, why are *those* legal obligations any different from the legal obligation to warn a guest about the risks of blindly confronting a darkened room?[13] It is in the nature of the common law that it *reflect* social customs and

---

"[T]he adoption of comparative negligence in this State has no effect on the basic duty a defendant owes to a plaintiff." *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 99 (1992) (quotation marks and citation omitted).

[13] Our caselaw with respect to licensees has suggested that darkness simply cannot constitute a circumstance that "conceals" a danger. In *Habina v Twin City Gen Electric Co*, 150 Mich 41, 48-49 (1907), this Court ruled in favor of the defendant and against the plaintiff, assuming that she was a licensee, explaining that the condition of the land "was concealed only by the darkness of the night. The case is ruled, in principle, by [*Reardon v Thompson*, 149 Mass 267 (1889)], and against the contentions of [the plaintiff]." In *Reardon*, Justice Holmes, writing for the Supreme Judicial Court of Massachusetts, stated that "the general rule is that a licensee goes upon land at his own risk, and must take the premises as he finds them. An open hole, which is not concealed otherwise than by the darkness of night, is a danger which a licensee must avoid at his peril." *Reardon*, 149 Mass at 267. Accordingly, under *Habina*, a licensor cannot be liable to a licensee in

practices and not *lead* society in new directions that might be favored by the court. Having been presented in this case with nothing that would suggest an evolution or transformation in the customs and practices of the people concerning the social host/social guest relationship, I would be content to maintain and preserve the present common law of this state.

## IV. CONCLUSION

I would reiterate today the principle of our common law that a social host may not be held liable for injuries suffered by a social guest from an allegedly dangerous

---

premises liability for a condition of the land that is "concealed only by the darkness of the night." *Habina*, 150 Mich at 49. See also *Erickson v Soyars*, 356 Mich 64, 71 (1959) ("The court did not err in instructing the jury that if the hole could have been seen in daylight by any person making reasonable use of his normal faculties then failure to do so may constitute contributory negligence and the hole was not rendered a 'hidden peril' by reason of the darkness of night.").

Courts of other states have similarly concluded that a premises possessor cannot be held liable for injuries suffered by a licensee because the condition of the land was "concealed" by darkness. See, e.g., *Fuchs v Huether*, 154 Mont 11, 15 (1969) ("At the most it may be said that the step was concealed by darkness and since the licensee must take the premises as he or she finds them, the owner is not liable for a danger that is only concealed by the darkness of night and which is easily avoided by the exercise of ordinary caution."), abrogated on other grounds by *Brown v Demaree*, 272 Mont 479 (1995); *Elliman v Gombar*, 86 Ohio App 352, 355 (1949) (" 'The duty which rests upon a licensee to take his license subject to its concomitant perils still exists when he passes along a path obscured by the darkness of night. Indeed, that darkness but accentuates his perils and risks and is a condition for which the licensor is in no wise responsible.' "), quoting *Coleman v Renesch*, 18 Ohio App 177, 180 (1923); *Susquehanna Power Co v Jeffress*, 159 Md 465; 150 A 788, 792 (1930) ("The only sound reason that the traveler could assign for his failure to see that the heavy superstructure and deck of the bridge were gone was the fog of a freezing winter night. Even if the plaintiff had been a licensee, the darkness would not have made the defendants responsible."); *O'Donnell v Electro-Motive Div of Gen Motors Corp*, 148 Ill App 3d 627, 635 (1986) ("[O]ur courts have repeatedly held that it is not willful and wanton misconduct for a landowner to fail to warn a licensee of a dangerous condition concealed only by darkness since such a danger is not considered hidden."); *Free v Furr*, 140 Cal App 2d 378, 384 (1956) ("The fact that the darkness of the night increased the hazard involved in using the premises did not increase the licensee's rights or enlarge the licensor's duties with respect to the condition of the premises.").

condition of the land when the host had no reason to expect that the guest would reasonably fail to discover the condition. That is, hosts are not required to monitor or surveil their guests to ensure that they do not suffer injury from commonplace household conditions, conditions to which the hosts and their families themselves are ordinarily and routinely subject. Here, plaintiff was injured when she stepped into the darkened mudroom without turning on the light or otherwise ascertaining that it was safe to enter. In my judgment, the law should not hold defendants liable when they had no reason to expect that plaintiff—or any other guest—would fail to exercise their own reasonable precautions. Accordingly, I would reverse the judgment of the Court of Appeals and reinstate the trial court's grant of summary disposition in favor of defendants. Because this Court fails to do so today and instead remands to the Court of Appeals to address the issue of duty—the very issue that we instructed the parties to address in our order nearly nine months ago—I respectfully dissent. I would not further delay a decision by this Court, if it is ever now to come, by requiring the parties to traverse the appellate process a second time in what I view as a matter involving the straightforward application of the settled common law of this state.

ZAHRA and WILDER, JJ., join the statement of MARKMAN, C.J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 25, 2018



Clerk

t0725