McCormack, J. (concurring).
 

 I concur in the Court's order remanding this case to the Court of Appeals to address the defendants' remaining summary disposition claims, which could provide an alternative basis for affirming the trial court ruling. I agree that questions of fact remain as to whether the particular condition-an 8-inch step in a dark room-was open and obvious, and that that question may not be material if the defendants had no duty to warn the plaintiff for the other reasons they have given.
 

 I write briefly to respond to the dissent. A lot of the dissent's concerns may be addressed by the Court of Appeals in deciding the defendants' other claims within our traditional doctrinal framework. Indeed, settled doctrine provides an avenue to reach the same result as the dissent would have us reach today where the record so supports. But I want to clarify what I believe that inquiry should look like, and why I believe the dissent's alternative approach departs from well-established doctrine.
 

 First, the dissent relies mistakenly on principles of comparative negligence to define the scope of the defendants' duty to warn. I am sympathetic to the dissent's view that a social host should expect guests to behave prudently and should not be held liable for their negligence. And there is room for the dissent's underlying concerns to do work in a proper analysis of duty. The Restatement (Second) of Torts, which we adopted in
 
 Preston
 
 , provides that a possessor has a duty to warn of a condition if the condition "involves an unreasonable risk of harm to ... licensees" and the possessor "
 
 should expect that they
 
 [
 
 a licensee
 
 ]
 
 will not discover or realize the danger
 
 ...." 2 Restatement Torts, 2d, § 342, p. 210 (emphasis added). This principle would support the dissent's contention
 that "[d]efendants had every right to expect that plaintiff was such a prudent person who would turn on the light and see the step, or at a minimum decline to walk into a darkened room without even the most cursory effort to determine whether it was safe to do so."
 

 And yet, this element of the duty to licensees does not mean that a host has no duty whatsoever to warn a social guest about any condition in a dark room (no matter how dangerous) because the host is entitled as a matter of law to expect guests to take the affirmative step of turning on a light switch to discover hazards. To be sure, a reasonably prudent person, walking through a strange house, might turn on the light before entering a dark room. And when a guest fails to do so, that failure may very well be relevant to apportioning damages under comparative negligence principles. But it will not be a reason for a court to find as a matter of law that there is no duty to the guest at all, no matter what dangerous condition awaited her.
 

 The Restatement contemplates that a licensee will discover "conditions which are perceptible by his senses, or the existence of which can be inferred from facts within the licensee's knowledge." Restatement, § 342, comment
 
 f
 
 , p. 212. Some conditions in a dark room will be more predictable than others-for example, it might be a fact within the licensee's knowledge that "mudrooms ... are [often] adjacent to garages" and that "garages are often themselves not level with the home" (these "facts" seem to be within the dissent's knowledge, curiously). The Restatement's standard thus assigns the homeowner a duty commensurate with the hazard: a slipper on the floor in a dark mudroom is different than an open shark tank in that same dark room. I trust the Court of Appeals can evaluate based on the record where the 8-inch step falls on that continuum.
 

 The dissent, in contrast, would create some kind of strange per se rule: defendants as a matter of law do not owe a duty to warn licensees of any danger that lurks in a dark room if there is a light switch nearby. Perhaps unsurprisingly, this rule does not map onto any argument that the defendants made in this case, and it would constitute a new approach to premises doctrine.
 
 [1]
 
 Under it, courts could decide for themselves as a legal matter that if a plaintiff appeared at all negligent (to a judge, unmoored from a factual record), she cannot recover and her suit is dismissed.
 

 Such a rule also would resurrect a judicial version of our long-dead contributory negligence regime under the camouflage of a duty analysis. But of course such an approach does not comport with the established understanding of negligence doctrine. The dissent owns its doctrinal contortion: "Although
 
 Brusseau
 
 was decided on the basis of contributory negligence, I believe that it would today likely be resolved on the basis of duty."
 

 But we judges are not authorized to apply contributory negligence principles by recasting them as duty. The Legislature has foreclosed that approach. Michigan, like most other jurisdictions, went from a contributory negligence jurisdiction
 to a comparative fault jurisdiction decades ago-comparative fault was judicially adopted in 1979 in
 
 Placek v. City of Sterling Heights
 
 ,
 
 405 Mich. 638
 
 ,
 
 275 N.W.2d 511
 
 (1979), and the Legislature specifically adopted comparative fault with
 
 1982 PA 147
 
 . It was codified in its present form in 1995 in MCL 600.2959. The Legislature, by requiring that a plaintiff's recovery be reduced by the percentage of her own negligence, mandated that a plaintiff's negligence could not be used as a basis to dismiss a suit altogether.
 
 [2]
 
 And we have clearly held that the Legislature's adoption of comparative fault did not abrogate the common-law, status-based duties of care of premises possessors:
 

 Once a defendant's legal duty is established, the reasonableness of the defendant's conduct under that standard is generally a question for the jury.
 
 The jury
 
 must decide whether the defendant breached the legal duty owed to the plaintiff, that the defendant's breach was the proximate cause of the plaintiff's injuries, and thus, that the defendant is negligent.
 

 * * *
 

 Conversely, comparative negligence is an affirmative defense. Michigan adopted this standard to promulgate a "fair system of apportionment of damages."
 
 Under this doctrine, a defendant may present evidence of a plaintiff's negligence in order to reduce liability
 
 . [
 
 Riddle
 
 ,
 
 440 Mich. at 96, 98
 
 ,
 
 485 N.W.2d 676
 
 (citations omitted; emphasis added).]
 

 We went on to quote the reasoning of the Illinois Supreme Court on the same question from
 
 Ward v. K mart Corp.
 
 ,
 
 136 Ill. 2d 132
 
 , 145,
 
 143 Ill.Dec. 288
 
 ,
 
 554 N.E.2d 223
 
 (1990), which held:
 

 In a common law negligence action, before a plaintiff's fault can be compared with that of the defendant, it obviously must first be determined that the defendant was negligent. It is fundamental tort law that before a defendant can be found to have been negligent, it must first be determined that the defendant owed a legal duty to the plaintiff.
 

 In short, we must operate under the comparative fault regime the Legislature imposed. Comparative fault is a rule of decision for damages. It does not define the contours of the defendant's legal duty.
 

 Second, while the dissent does not cite much of the evidence from the deposition testimony, a court considering a motion under MCR 2.116(C)(10) is obligated to evaluate it. The dissent proceeds as if a number of facts are undisputed. For example, the dissent states that "there is nothing to suggest that defendants had reason to expect that plaintiff would not in a timely manner discover the step." But the plaintiff
 
 has
 
 suggested a few reasons: the plaintiff testified in her deposition that the floor of the mudroom appeared level with the wood floor of the hallway; Endia Simmons testified that if she had been the one to enter the mudroom first, she would have fallen, because there was no way to tell any height differential existed; Ebony Whisenant also testified that the floor looked level between the two rooms; and photographs show that the dark floor could
 make the step difficult to see, even with adequate light.
 
 [3]
 
 Ultimately, even if evidence clearly weighs in favor of the party seeking summary disposition, it is not the role of courts to weigh evidence in a motion brought under MCR 2.116(C)(10). Instead, a court must consider the evidence in the light most favorable to the nonmovant and determine if reasonable minds could differ in resolving the evidence. MCR 2.116(C)(10) ;
 
 Maiden v. Rozwood
 
 ,
 
 461 Mich. 109
 
 , 120,
 
 597 N.W.2d 817
 
 (1999) ;
 
 Allison v. AEW Capital Mgt., LLP
 
 ,
 
 481 Mich. 419
 
 , 425,
 
 751 N.W.2d 8
 
 (2008). The lower courts are well equipped to assess the record with the assistance of the parties in evaluating the facts relevant to the remanded claims.
 
 [4]
 

 To reiterate, the proper evaluation of a homeowner's duty to a licensee will take into account the questions that concern the dissent. But no doctrinal contortion is
 needed to protect property owners from baseless claims. Well-established doctrine will work.
 

 VIVIANO , J., joins the statement of MCCORMACK , J.
 

 This new approach would not result in less litigation, of course. Just different litigation. Rather than litigating the dangerousness of the condition on the land, the parties instead will wage a war of light-switch litigation. We could look forward to adjudicating questions about where the light switch was, whether it was easily findable, and what a licensee should have to do to find it. And it begins to look like an affirmative duty to ensure that there is an accessible and working light switch. So much for relief for property owners.
 

 Michigan is (mostly) a pure comparative negligence jurisdiction. That is, even if a plaintiff is 99% at fault, she can still recover 1% damages. The one exception to this is for noneconomic damages-like compensation for pain and suffering, emotional distress, or loss of enjoyment-which are barred whenever the plaintiff is more at fault than anyone else. MCL 600.2959 ("If that person's percentage of fault is greater than the aggregate fault of the other person or persons, whether or not parties to the action, the court shall reduce economic damages by the percentage of comparative fault ... and noneconomic damages shall not be awarded.")
 

 There are also questions of fact that would be relevant if the dissent's no-duty-if-there-is-a-light-switch rule prevailed: whether the plaintiff would have known which light switch corresponded with the mudroom, how obvious that switch was, whether she should have flipped it. And so on.
 

 While unimportant to resolving this case, I am puzzled by the dissent's view that the open and obvious danger doctrine is only relevant to invitees. I do not follow this doctrinal move. I am aware of no authority that limits the work that the open and obvious danger doctrine can do in the way the dissent views it. We have never held that the open and obvious danger doctrine is limited to invitees. Indeed, the Court of Appeals has routinely applied the doctrine to licensees, and we have not intervened. See, e.g.,
 
 Pippin v. Atallah
 
 ,
 
 245 Mich. App. 136
 
 , 143,
 
 626 N.W.2d 911
 
 (2001) ("[A] possessor of land has no obligation to take any steps to safeguard licensees from conditions that are open and obvious.").
 

 The open and obvious danger doctrine is implicit in the definition of the duty owed to licensees because a premises possessor will never owe a duty to warn licensees of an open and obvious danger. A danger that is open and obvious will always be one a landowner should expect that a licensee should discover.
 

 The Restatement explicitly incorporates the open and obvious danger doctrine as a limit on liability to invitees, who would otherwise be entitled to expect greater protection from the landowner. Comment
 
 a
 
 to § 343 instructs that § 343 "should be read together with § 343 A, which deals with the effect of the fact that the condition is known to the invitee, or is obvious to him .... That Section limits the liability here stated." And Comment
 
 b
 
 to Restatement § 343 offers a detailed explanation of the distinction between the duty owed to licensees and invitees. It concludes:
 

 As stated in § 342, the possessor is under no duty to protect the licensee against dangers of which the licensee knows or has reason to know. On the other hand, as stated in § 343 A, there are some situations in which there is a duty to protect an invitee against even known dangers, where the possessor should anticipate harm to the invitee notwithstanding such knowledge. [Restatement, § 343, p 217.]
 

 Our court's version of this carve out of the open and obvious danger defense for invitees is the special aspects doctrine. As in the Restatement's treatment, there is no reason that the special aspects carve out for invitees should apply to licensees-a possessor owes a licensee nothing more than a duty to warn, and an open and obvious danger comes as its own warning. The work that the open and obvious danger doctrine can do for both classes of visitors is apples to apples: there is no duty to warn
 
 any
 
 visitor of open or obvious dangers. But the extent of residual duty is oranges. Invitees must still be protected from certain known dangers; but a licensee who encounters an open and obvious danger has received the only protection to which he is entitled under our doctrine-a warning.
 

 I agree with amicus curiae the Michigan Manufacturers Association-a landowner has a duty to warn of dangers she should not expect a licensee to discover, but "[a]ny duty to warn does not apply to dangers that are open and obvious ...." The existence of an open and obvious danger
 
 itself
 
 warns guests of a potential hazard. Thus, if a danger is open and obvious, a property owner has no duty to fix it (for invitees) or to warn about it (for licensees). In my view, property owners should be able to rely on the open and obvious danger doctrine no matter who is visiting.