*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLY CHERNY,

UNPUBLISHED
September 29, 2022

Plaintiff-Appellee,

v

No. 357328
Genesee Circuit Court
LC No. 19-112645-NO

GENERAL MOTORS, LLC,

Defendant-Appellant,

and

ARAMARK MANAGEMENT SERVICES
LIMITED PARTNERSHIP,

Defendant-Appellee.

Before: K. F. KELLY, P.J., and LETICA and RICK, JJ.

PER CURIAM.

In this premises-liability action, defendant, General Motors LLC (hereinafter "GM"), appeals by leave granted[1] the trial court's order denying its motion for summary disposition. We reverse and remand for entry of an order granting summary disposition in favor of GM.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This action arises out of injuries that plaintiff, Kimberly Cherny, sustained in November 2017, when she slipped and fell during her employment as a security officer with G4S Secure Solutions, Inc. ("G4S"). GM maintained a large storage facility or warehouse in Grand Blanc, Michigan. It contracted with G4S to provide security services on the premises. Aramark

---

[1] *Cherny v Gen Motors LLC*, unpublished order of the Court of Appeals, entered August 11, 2021 (Docket No. 357328).

Management Services Limited Partnership ("Aramark")[2] performed janitorial and other services at the warehouse. In May 2017, G4S assigned plaintiff to work at GM's Grand Blanc warehouse.

The warehouse consisted of nearly 1.3 million square feet and kept over 50,000 items. The warehouse contained materials that were unloaded from trucks and stored until they were sent to other locations. For safety reasons, materials shipped to the warehouse had to be banded correctly. Consequently, GM employees were responsible for checking the materials sent to the warehouse. If a shipment of material arrived with a broken banding or a disturbance to the load that could be deemed a safety issue, the material was moved to a specific location near the dock. It remained at that location until it was repaired and made safe by a skilled trades team. After any repair, the material was moved into the warehouse. If the load was deemed unsafe to even unload from the truck, it was returned to the sender. In the majority of cases, the shipment was repaired because it was banded and wrapped in multiple forms such that one failure did not render the load completely unsafe.

Nonetheless, the movement of a shipment into the warehouse did not render the premises free from debris and safety issues. There was mobile equipment constantly moving throughout the warehouse. Forklifts bumped into pallets without the operator's knowledge. Aramark used "scrubbers" throughout the warehouse to always keep the floor clean, and the scrubbers also collided into pieces of material. Because the warehouse was a long-term storage facility, cardboard could deteriorate over time because of age, moisture, or water damage. Consequently, there were weekly safety observation tours when a team member from GM, Aramark, and G4S walked the warehouse or specific sections to identify unsafe areas. Additionally, if any employee assigned to the warehouse found a safety hazard, the area was to be barricaded off, and a team would assess whether the load had shifted and whether a repair could occur in the current warehouse location.

On November 30, 2017, plaintiff fell in the warehouse but there were no witnesses or security cameras that recorded the incident.[3] Plaintiff testified that she began her workday at 8:30 a.m. She reported to the console desk and then began to walk through an area of the warehouse that she had traversed at least five times before. Plaintiff described the area as having a main aisle with intersecting side aisles. The aisles were illuminated with overhead lighting, but the lighting for the side aisles was provided by motion-activated lights. As plaintiff walked down the main aisle, she heard a forklift being operated nearby, and she turned down one of the side aisles to avoid it.

Plaintiff testified that the side aisle was approximately 15 to 20 feet wide and lined with filled pallets. As plaintiff entered the side aisle, the motion-activated lights flickered, but did not

---

[2] Our order granting leave to appeal was limited to the issues raised in GM's application. Therefore, we do not consider Aramark's request for reversal of the trial court's ruling denying its motion for summary disposition as raised in its appellee brief.

[3] There were security cameras located on the outside of the premises but not inside the warehouse.

activate.[4] Plaintiff took approximately two steps and stepped on something that caused her to slip. She then lost her balance and fell to the ground. Plaintiff testified that "something" wrapped around her left boot and pulled her down. Plaintiff discovered that she had become entangled in a pallet strap[5] that had broken away from a nearby pallet and its load. Plaintiff admitted that she was looking straight ahead just before she fell and had not been looking at the ground.

Plaintiff also testified that, as a security officer, her responsibilities included walking the warehouse to ensure that it was in good working condition. She was trained and required to look for and report any dangerous conditions, including substances and debris on the floor. Plaintiff testified that there were areas in the plant where the lights would flicker and not come on. Plaintiff asserted that the lights had not been operating properly in the area where the fall occurred, testifying: "[I]t's been dark in that area for a while." According to plaintiff, she had reported problems with the lighting in that area before her fall, but she could not recall how many times. Plaintiff later testified, however, that she could not recall if she had experienced trouble with the lighting in that area before.

Plaintiff filed this action against GM and later added Aramark as a defendant. Plaintiff alleged that her injuries were a result of GM's and Aramark's failure to inspect, repair, and maintain the premises, or otherwise exercise due care to make the premises safe.

After discovery concluded, GM moved for summary disposition under MCR 2.116(C)(10). GM submitted that plaintiff's premises-liability claim failed because, even with limited lighting, the green pallet strap was open and obvious. Alternatively, GM asserted that it lacked actual or constructive notice of any defect on the premises. In response, plaintiff claimed that a question of fact existed with respect to whether the pallet strap was open and obvious, and whether GM had notice of the defect on the premises. Plaintiff also asserted, for the first time, that GM was liable under the doctrine of res ipsa loquitur and sought leave to amend her complaint to include this theory.

The trial court denied GM's motion for summary disposition, concluding that there were questions of fact regarding whether GM had actual or constructive notice of the defect and whether the pallet strap was an open and obvious hazard. However, the trial court noted that, to the extent plaintiff's claims were speculative, it would allow plaintiff to amend the complaint to raise the

---

[4] After plaintiff was taken away from the warehouse by ambulance, warehouse employees of varying heights tested the lights in the area of plaintiff's fall. The motion-activated lights did not malfunction at that time.

[5] Apparently, the witnesses agreed that the warehouse floor was the color gray. Plaintiff testified that the pallet strap was black. But the employees that responded to plaintiff's fall and the photograph taken of the strap indicated that the pallet strap was a reflective green color. This factual dispute is not pertinent to the issue of notice.

theory of res ipsa loquitur. The trial court also denied GM's motion for reconsideration.[6] We granted GM's application for leave to appeal the trial court's decision.

## II. STANDARD OF REVIEW

The appellate court reviews de novo a trial court's decision regarding a motion for summary disposition. *Wurtz v Beecher Metro Dist*, 495 Mich 242, 249; 848 NW2d 121 (2014). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted). Further, the issue whether the doctrine of res ipsa loquitur is applicable to a particular case presents a question of law. *Jones v Poretta*, 428 Mich 132, 154 n 8; 405 NW2d 863 (1987). Questions of law are reviewed de novo. *Foster v Foster*, 505 Mich 151, 165; 949 NW2d 102 (2020).

## III. NOTICE

GM alleges the trial court erred by denying summary disposition because plaintiff failed to present any evidence that GM had actual or constructive notice of the allegedly hazardous condition or created the condition. We agree.

The parties do not dispute that plaintiff was an invitee when she fell at GM's warehouse. To prevail on a premises-liability claim, "an invitee must show that the premises owner breached its duty to the invitee and that the breach constituted the proximate cause of damages suffered by the invitee." *Lowrey*, 500 Mich at 8. "A premises owner breaches its duty of care when it knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Id*. (quotation marks and citation omitted). To establish this element, a plaintiff must show that the premises owner had actual or constructive notice of the dangerous condition. *Id*. at 8, 10. The *Lowrey* Court explained:

> The proprietor is liable for injury resulting from an unsafe condition caused by the active negligence of himself and his employees; and he is liable when the unsafe condition, otherwise caused, is known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have knowledge of it. [*Id*. at 10 (citation omitted).]

---

[6] In denying reconsideration, the trial court clarified it concluded that plaintiff's claim was not speculative. Further, the trial court instructed plaintiff to plead the theory of res ipsa loquitur instead of raising it as a separate cause of action.

Accordingly, in order to establish notice, a plaintiff must demonstrate that the defendant knew about the alleged defect or should have known because of its character or the duration of its presence. *Id.* at 11.[7] Where a plaintiff fails to proffer evidence sufficient to show a defendant's actual or constructive notice of a hazardous condition, a defendant is entitled to summary disposition. *Id.* at 9. A premises owner or possessor is not the insurer of the safety of its invitees. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 526; 629 NW2d 384 (2001). The overriding public policy of this state is to encourage individuals to take reasonable care for their own safety, and a reasonably prudent person will watch where she is walking. See *Bertrand v Alan Ford, Inc*, 449 Mich 606, 616-617; 537 NW2d 185 (1995).

Plaintiff presented no evidence that GM was actually aware of the presence of the pallet strap before plaintiff fell. Indeed, plaintiff admits that "nobody knows for sure how the band became dislodged." Consequently, actual notice is not at issue. A premises owner has constructive notice of a hazard if "the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Id*. at 11-12. In this case, there was no evidence that GM had constructive notice of the hazard. There was no indication the broken pallet strap was lying across the side aisle for such a period of time that a reasonable premises possessor would have discovered it. The uncontroverted evidence was that the pallet from which the strap broke was delivered the day before plaintiff's fall. In light of the size of the warehouse, approximately 1.3 million square feet, and its limited hours of operation, between the hours of 6:00 a.m. and 4:00 p.m., there was no indication that defendant had constructive notice of the broken strap. Further, plaintiff started her shift on November 30, 2017, at 8:30 a.m., and the fall occurred shortly after she began her walk around the facility in her capacity as a security officer. Although there was no evidence as to when the condition arose, the evidence suggested that the loose strap was present in the side aisle for less than 24 hours.

Nonetheless, plaintiff submits that where there is active negligence, i.e., that GM caused the hazardous condition, proof of notice is unnecessary. That is, where the possessor of land creates the dangerous condition, the knowledge of the condition is imputed to the possessor. See *Pippin v Atallah*, 245 Mich App 136, 145 n 2; 626 NW2d 911 (2001). However, plaintiff failed to establish a question of fact whether GM was responsible for the broken strap.

Two employees identified several activities that could have caused the pallet strap to break. Michael Mosier, Aramark's operations manager, testified that a pallet strap could break when the material is set down by the fork operator. He also surmised that a fork truck could bump into

---

[7] Plaintiff claimed that there were two hazardous conditions on the premises: (1) the strap on the floor, and (2) inadequate lighting. In addressing the lighting, plaintiff insists that GM was aware that the motion-activated lights were malfunctioning. However, even assuming that GM had notice of this alleged defect, such a finding would not alone satisfy plaintiff's burden or preclude summary disposition in GM's favor. "Certainly there was no need to warn plaintiff of the dark." *Knight v Gulf & Western Props, Inc*, 196 Mich App 119, 127; 492 NW2d 761 (1992). Further, the alleged poor lighting would have presented no danger had the pallet strap not been there. Thus, plaintiff could not survive summary disposition simply by establishing a question of fact whether GM was aware of the allegedly malfunctioning lights.

something without the operator's knowledge. Mosier further testified that the scrubbers used by the maintenance team to clean the floors could have bumped into the material. Mosier even speculated that the broken strap could have been missed on inspection or that an individual could have pulled on it. Finally, because the warehouse was a long-term storage facility, moisture or water damage could cause the cardboard to deteriorate and fall apart. Given the multiple potential causes, Mosier declined to give an ultimate opinion regarding the cause of the broken strap, noting he would merely be engaging in "speculation" regarding what "would have happened." Mosier examined the windshields near the broken strap and did not find that they had shifted or needed "banding or bracing of any kind."

Similar to Mosier's testimony, Roxanne Nance, warehouse supervisor, speculated that the strap could have been broken by the forks of the fork trucks during loading and unloading. She also opined that a pallet strap could break if the material was improperly banded, or the material was off balance. Nance agreed that if the banding broke because of the operation of the forklift truck, that would be attributable to a GM employee. Further, if material had been improperly banded by the original shipper, the only person inspecting for that would be a GM employee. However, Nance did not actually know how the pallet strap broke and would have engaged in speculation as to the possible cause. Further, these employees did not testify that one of the scenarios was more probable than another. Additionally, because of the size of the warehouse, there were three different groups of employees onsite, including plaintiff in security, that were tasked with identifying safety issues. These employees were given three-wheeled bicycles to traverse the vast warehouse. Accordingly, because the evidence indicated that there were multiple explanations for how the pallet strap could have broken, and the evidence did not establish that one cause was more probable than another, the evidence of causation was mere conjecture. "A party opposing a motion for summary disposition must present more than conjecture and speculation to meet its burden of providing evidentiary proof establishing a genuine issue of material fact." *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 723; 909 NW2d 890 (2017), quoting *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 192-193; 540 NW2d 297 (1995). Thus, plaintiff failed to establish a question of fact whether the alleged hazard was created by GM's active negligence.

Additionally, the evidence submitted to the trial court did not establish a reasonable likelihood of probability that GM was responsible for dislodging the pallet strap. *Skinner v Square D Co*, 445 Mich 153, 166-167; 516 NW2d 475 (1994). The proffered evidence lent equal support to inconsistent conclusions or was equally consistent with contradictory hypotheses such that premises liability could not be established. See *id*. at 167. Two employees identified several possible scenarios that implicated, among others, GM, Aramark, G4S, and the entity that originally shipped the pallet to the warehouse. Indeed, Mosier noted that there were multiple reasons for a strap to break and there were weekly safety meetings when onsite employees from GM, Aramark, and G4S walked all or sections of the warehouse to identify safety issues. Further, when a safety issue was identified, it was policy to secure the area and have a team identify how to address the issue. Thus, although pallets were secured prior to placement in the warehouse, there were multiple reasons why a pallet strap would break after warehouse placement and addressing the issue was a predominant concern handled by onsite tours, meetings, and procedures.

Finally, we conclude the elements of res ipsa loquitur were not satisfied to establish GM's negligence.

Res ipsa loquitur is a doctrine that is invoked to create at least an inference of negligence when a plaintiff is unable to prove the actual occurrence of a negligent act. *Woodard v Custer*, 473 Mich 1, 7; 702 NW2d 522 (2005). To employ the doctrine, a plaintiff must satisfy the following conditions:

> (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
>
> *(2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;*
>
> (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff; and
>
> (4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff. [*Id.* (quotation marks and citation omitted; emphasis added).]

In this case, the trial court erred by permitting plaintiff to invoke the doctrine because the evidence established that the instrumentality that caused the loose pallet strap to be lying across the aisle was not within the exclusive control of GM. Again, two witnesses speculated regarding the agencies or instrumentalities that could have caused the pallet strap to break. While GM employees operated the forklifts that moved the pallets, the testimony also established that entities other than GM, specifically Aramark and G4S, also had access to the premises and worked around the pallets. While it was possible that a GM employee broke the strap after striking it with a forklift or in the process of placing the pallet, it is also plausible that an Aramark janitorial crew member severed the strap while using a scrubber to clean the floors. Additionally, there was other mobile equipment used in the facility that could have severed the strap. For example, GM, Aramark, and G4S employees were given three-wheeled bicycles to traverse the expansive warehouse. Further, an Aramark employee testified that when a band is on the floor, they had been instructed to "pull it" and throw it away. It can be inferred from this testimony that Aramark employees had some responsibility for removing straps from pallets and, with that duty, there was the possibility that it was not done properly. As a consequence, an Aramark employee could have created the hazardous condition. Contrary to plaintiff's position, the testimony established that activities that could affect the pallet strapping in the warehouse was not in GM's exclusive control. Accordingly, it was improper to invoke the doctrine of res ipsa loquitur to impute negligence to GM.[8]

---

[8] We also note that the doctrine of res ipsa loquitur requires that there not be any voluntary action or contribution on the part of the plaintiff. *Woodard*, 473 Mich at 7. Plaintiff testified that she was not watching where she walked but was looking straight ahead. Again, it is the public policy of this state that individuals take care for their own safety and watch where they are walking, and premises owners or possessors are not the insurers of the safety of invitees. *Lugo*, 464 Mich at 526; *Bertrand*, 449 Mich at 616-617.

-7-

In sum, plaintiff failed to proffer evidence sufficient to demonstrate a question of fact regarding GM's actual or constructive notice of the allegedly hazardous condition. Accordingly, we reverse the trial court's order denying GM's motion for summary disposition and remand for entry of an order granting summary disposition in GM's favor.[9]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. GM, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Anica Letica
/s/ Michelle M. Rick

---

[9] In light of our conclusion regarding notice, we do not address the application of the open and obvious doctrine.